This is a compensation suit in which plaintiff claims total and permanent disability. After trial there was judgment in favor of defendant rejecting plaintiff's demands, from which judgment plaintiff has appealed.
About 4:30 or 5 o'clock on the afternoon of December 27, 1943, plaintiff was standing beside a cotton press sewing heads of bagging on a bale of cotton. While no exact description of the press is given in the testimony, we assume that it was of the kind in ordinary and common use by cotton compresses. Certain parts of the press extended above plaintiff's head as he worked, and some 12 feet above him there was a walkway, used at necessary times by employees for the purpose of oiling and cleaning parts of the press. Several other employees were working at or near the press. At the time set forth, without warning, and from some undetermined cause, the press burst, and pieces of cast iron and timber showered the area at and about the spot where plaintiff was working. *Page 493 
In close proximity to the press, only a few feet behind the spot upon which plaintiff stood, there was a trap door covering a hole several feet deep, which led down to and under the press and afforded a means of access for cleaning trash from under the machine.
The force of the explosion or collapse of the press knocked plaintiff back to a point directly above the trap door described, and he was struck by an indeterminate number of pieces of the debris. There is a distinct conflict of testimony on the point as to whether plaintiff was simply knocked down upon the trap door, or whether he was knocked through the door into the hole beneath. This point is immaterial and unimportant. The testimony clearly establishes the fact that plaintiff was practically covered with pieces of iron and timber, and it is further established that some of these pieces were of considerable weight.
It is evident that immediately following the accident the scene thereof was a place of confusion. An automatic sprinkler had been torn loose and water was flooding the spot. A fellow employee of plaintiff's who was working at the press, suffered a shoulder injury. A foreman ran to the scene, called upon some of the employees for assistance, removed the metal and wood from plaintiff, and pulled him outside the compress where he was covered with bagging until an ambulance arrived, in which he and the employee suffering from the shoulder injury were placed and removed to St. Francis Hospital in Monroe.
Plaintiff testified that he remembered nothing after the bursting of the press until some time later when he recovered consciousness in the hospital. There is some testimony to the effect that plaintiff complained of being cold, specifically, that he was "freezing". In view of the injuries suffered by plaintiff and the preponderating testimony as to his condition immediately following the accident, we find no inconsistency in plaintiff's statement that he remembered nothing and the statement of one or two other witnesses that he complained of cold. The testimony of the other injured employee, which is uncontradicted on the point, establishes the fact that when directions were given for making X-rays of plaintiff upon his arrival at the hospital, one of the nurses expressed some hesitancy on the ground that plaintiff appeared to be dead.
Plaintiff remained in the hospital from December 27, 1943, to January 6, 1944, and was under treatment of defendant's physician until February 21, 1944, at or about which time he was discharged as being able to return to work. Compensation, covering a period of nine weeks, was paid to plaintiff at the rate of $12.35 per week, based on a weekly wage of $19. On February 27th, without having returned to work, plaintiff was discharged from the employ of the defendant.
The disability alleged by plaintiff is claimed to have resulted from injuries to his head, back, chest and hip, and, in addition to these injuries, plaintiff claims that he suffered a left inguinal hernia, as the result of the injuries sustained in the accident. The testimony of four doctors testifying on behalf of plaintiff, and five testifying for defendant, all qualified as expert medical witnesses, discloses the usual irreconcilable difference of opinion which has come to be expected in cases of this character. However, there is no dispute as to certain of the injuries caused plaintiff, namely, a rather severe laceration of the scalp at the base of the skull, at least one fractured rib and numerous bruises and contusions about the upper part of the body. The testimony is particularly controversial with respect to the back injuries, but it is upon the question of the cause of the hernia that the testimony of the learned gentlemen of the medical profession differs to such a degree as to be impossible of reconciliation.
On arriving at a decision of this matter it is necessary that we discuss the several alleged injuries, and the testimony bearing thereupon, in more or less detail in an effort to arrive at a determination of the facts actually existing, as disclosed by the record.
Plaintiff is a 47 year old negro, who had been a common laborer all his life, and who has no history, in so far as is disclosed by the record, of any physical infirmity or disability prior to the accident. He complains, as a result of the injuries suffered from the accident, of the continued existence of pain in his neck, head, back and chest, a definite restriction of freedom of movement as the result of the back injuries. In addition to these complaints, plaintiff further contends that the hernia causes severe pain and is in itself totally disabling. It goes without saying that none of the witnesses can with certainty eliminate *Page 494 
these subjective symptoms of pain, nor do they attempt so to do. As to the fact that plaintiff suffered a blow upon the back of the head, which was severe enough to lacerate the scalp, there can be no doubt. Dr. Guerriero, defendant's physician who attended plaintiff after the accident, testified that he first stopped the bleeding and then sutured the scalp; that he found no fracture or concussion of any degree which would indicate a continued disability. This witness further testified that plaintiff complained only of pain in his head, back, chest and hip during the time he was under treatment, and that he knew nothing of any hernia condition until several months after he had discharged plaintiff from treatment. The doctor made no examination except at the time plaintiff was received at the hospital, and at that time he made no examination of the abdominal region which might have disclosed the existence of a hernia.
The testimony of Drs. Moore and Smith, specialists in roentgenology, witnesses for the defendant, limits the findings, as disclosed by their X-ray examinations, to two fractures of one rib, and a chipped fracture of the right ilium. These witnesses found no evidence of any fracture of the skull. They found certain deformities and maladjustments of the vertebrae, the cause of which they attributed to hypertrophic arthritis, eliminating any causal connection with the accident. No examination for hernia was made, and, as a matter of fact, neither of these specialists made any physical examination of plaintiff, but confined their examination to the X-ray plates, in the interpretation of which they are qualified experts. Dr. Moore testified that the fractures of the rib had "practically healed", and that no difficulty or ill effects could be anticipated or expected from the chipped fracture of the ilium.
Dr. Graves, a witness for defendant, testified that he made a thorough examination of plaintiff on June 6, 1944, only a few days before trial; that, while he found a scar on the left side of the head over the parietal portion of the skull, it was entirely healed and there was no evidence of any skull deformity; that, despite plaintiff's complaints of pain in his back, no interference in motion or rigidity was detected.
The testimony of defendant's witness, Dr. Guerriero, reveals that he saw and treated plaintiff immediately after the accident at St. Francis Sanitarium; that at the time plaintiff appeared to be badly, though not seriously, injured; that he had extensive lacerations of the scalp, which were bleeding profusely; that he complained of pain, and that he was "slightly shocked"; that he made a routine checkup, ordered X-rays of the chest, head and pelvis, which disclosed the fractured rib and the chipped ilium, but no fracture of the skull; that plaintiff made no complaint of pain in the hernial region, and, consequently, that he made no examination at the time, his first knowledge of the hernia occurring on June 5, 1944, when he made a reexamination. This witness testified that he discharged plaintiff from treatment on February 21, 1944, as able to return to work, but this testimony was obviously based upon the witness' lack of knowledge of the hernia condition, and, with regard to this disability, he testified that the same was totally disabling, and that he didn't believe anybody would hire a man with such a hernia.
Dr. Hunter, another witness for defendant, also examined the plaintiff on June 6, 1944, and his testimony is in accord with that of the other medical witnesses for the defendant, who had made physical examinations of the plaintiff at or about the same time.
Turning to the testimony of plaintiff's medical experts, we find that Dr. Mosley testifies to extensive injuries to the bony structure of plaintiff's back and ribs, including compression of vertebral discs, numerous fractures of several ribs, and assorted injuries to the vertebrae. Dr. Mosley also found evidence of the existence of an aneurysm, and, of course, the disabling hernia condition. Dr. Collins, while testifying principally with reference to the hernia condition, also substantiated Dr. Mosley's testimony, to large degree, as to the back and rib injuries. Dr. Walsworth found evidences of a severe laceration of the scalp, a head injury, and definite and multiple scars on the back and in the thoracic and hip regions, as well as the existence of the left inguinal hernia, which he designated as a traumatic hernia in the light of the history of the accident. Dr. Fisher confined his testimony almost exclusively to the results of his examination bearing upon the hernial condition, which he also attributed to traumatic injury.
Defendant attempts to make much of the point that plaintiff never complained of *Page 495 
pain in the hernial region until some week or so after he was discharged from the employment of the defendant, and after he had consulted counsel and been examined at the direction of counsel by some of the doctors who testified on his behalf upon trial of the cause. Strangely enough, there is comparatively little testimony in the record as to the degree of pain suffered by plaintiff, but we are convinced that plaintiff must have suffered a considerable degree of pain. Unquestionably he was in an unconscious, or, at least a semiconscious, condition for an undetermined period after the accident. According to the attending physician he was suffering from shock, and he spent some eight or nine days in bed in the hospital immediately after the accident. For several weeks after the accident plaintiff was incapacitated and drew compensation. Plaintiff himself testifies that he never had a hernia prior to the accident, which testimony is corroborated by his wife, and there is not one single vestige of testimony in the record which would serve to contradict the testimony on this point. It is admitted by every doctor who made a thorough examination of plaintiff that the hernia from which he suffered at the time of trial was unquestionably disabling. There is nothing in the record of this case before us which would give rise to even the slightest presumption that plaintiff was suffering from a hernia prior to the accident which is the basis of this action. True, the testimony of defendant's experts indicates that because plaintiff went for several months without discovery of the existence of the hernia, and without complaint of any feeling of pain in the locality thereof, the logical inference would be that the origin of the hernia was not traceable to the accident. But, it must be remembered that plaintiff was suffering from other severe and painful, though not serious, injuries. It does not seem strange or unreasonable to us that plaintiff, lying in bed in a hospital suffering from fractures of a rib or ribs, a chipped ilium, a lacerated scalp and multiple bruises and contusions, omitted or neglected or failed to complain of abdominal pain emanating from the hernial region. It could very well be that plaintiff's other injuries, though less permanent in nature, for a time were more painful and annoying. Then, too, it is obvious that the enforced confinement to bed and a period of several weeks complete rest following hospitalization were beneficial and for a time prevented the emergence of the orange-sized mass in the groin, which later indicated to plaintiff the existence of a hitherto unknown injury. Plaintiff is a simple, uneducated negro, obviously without any but the most elementary knowledge of anatomy, and his failure to direct the attention of attending physicians to the hernia is not unnatural under the circumstances of the case.
There is a definite disagreement between the medical experts as to the designation of the hernia in question as a "sliding hernia". Defendant's witnesses on examination testified that the injury was of a type and character known as a sliding hernia. This conclusion was vigorously disputed by plaintiff's medical witnesses on rebuttal, who testified that diagnosis of a sliding hernia could not be made with certainty except through an examination attendant upon operative intervention, and that plaintiff's hernia was not subject to classification as a sliding hernia.
Medical testimony is always uncertain on the question of the age of an existing hernia. Doctors almost without exception refuse to express a firm opinion as to whether a hernia has existed for periods of a few weeks, of many months, or, possibly, years. It is therefore necessary to look to surrounding facts and to lay testimony which will serve as a guide for the Court in reaching a conclusion. We have above commented on the fact that the uncontradicted testimony of defendant and his wife negatives the existence of a hernia prior to the time of the accident. Of course, where an examination is made immediately after a claimant has sustained an accidental injury, there are several factors to be considered, such as the severity of pain suffered at the time of injury, the character and type of force sustained, that is whether a blow or a severe and sudden strain caused from lifting, and sometimes lacerations, discolorations or bruises in the hernial region. Unfortunately, none of these signs or symptoms are available in the instant case. Plaintiff was suffering from so many other severe and painful injuries that the pain in the hernial region might easily have been less in degree, and therefore escaped particular reference on the part of the patient and attention on the part of his physician. By the time the existence of the hernia was discovered, and the pain and discomfort had begun to impress themselves upon plaintiff, all external evidences of a traumatic injury in the hernial *Page 496 
region had disappeared. There is left then only one circumstance available for consideration, namely, the type and character of the accident. Was the accident of a kind which could have produced an injury causing a traumatic hernia? We think such a question can only be answered in the affirmative.
There is no testimony in the record to show what pieces of timber and iron, sundered by the bursting press, actually struck plaintiff, nor where. As we have stated, the scene of the accident was one of confusion. Plaintiff was unconscious, or so dazed that he did not, indeed, could not, know, with even the slightest degree of certainty, how the injuries from which he later suffered were inflicted, and he makes no attempt to give any details. Nor was the testimony of other witnesses helpful with reference to this point. Whether plaintiff was knocked onto or through the trap door, he must have been struck by a number of pieces of timber and iron, and was so pinned down, and at least partially covered by the debris resulting from the bursting of the press, that he was extricated with some little difficulty. It is obvious that the accident could have caused a traumatic hernia. Since the record is barren of any testimony of any nature or degree which would serve to indicate the pre-existence of the hernia, and equally barren of any testimony which would support a claim, which, by the way, is not even advanced by defendant, that the hernia was caused between the date of the accident and the first examination disclosing its existence some six months later, it must be concluded that the accident of December 27th is responsible for the existence of the hernia.
We have dwelt at length upon the phase of plaintiff's action involving the existence of the hernia because, to our minds, the conclusion reached on this point is determinative of the entire matter.
[1] It is true that only issues of fact are involved in this appeal, and we thoroughly appreciate the potency of the argument advanced by defendant's counsel in brief that great weight must be given to the findings of fact as reflected in the judgment rendered by our learned brother of the district court. It is for this reason that we have considered, with unusual care and thoroughness, the record before us and the testimony of each individual witness. Our brother of the district court rendered judgment immediately after testimony in the case was closed, and accordingly, we are not favored with a written opinion setting forth his reasons for judgment and the basis upon which he predicated the same.
[2] Summing up our findings in this matter, we are of the opinion that plaintiff has proved his case by a preponderance of the evidence. Testimony of the X-ray specialists that the fractures sustained by plaintiff were "practically healed" would indicate that there was not a complete healing, and, for this reason, if no other, plaintiff's claims of continued pain must perforce be accorded credence. However, we cannot, upon the record before us, fix the extent and duration of disability from these injuries with any degree of accuracy. But, we are relieved of the necessity of so doing by reason of our conclusion, reached after long and careful consideration, that plaintiff suffered, as the direct result of the accident sustained in the course of his employment, an inguinal hernia, which has caused total permanent disability.
Accordingly, the judgment appealed from is reversed and set aside, and
It is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, and against the defendant, awarding compensation at the rate of $12.35 per week for the period of total and permanent disability, not, however, exceeding 400 weeks, and subject to credit for compensation heretofore paid for a period of nine weeks.
[3] It is further ordered, adjudged and decreed that the fees of the physicians testifying as experts on behalf of plaintiff be, and they are hereby fixed at $25 each, and the fees of the physicians testifying for defendant, who were called in rebuttal as well as for examination in chief, be, and they are fixed at $50 each.
It is further ordered that all costs be, and they are hereby taxed against defendant-appellee. *Page 497