279 So.2d 17 (1972)
STATE of Florida ex rel. Robert L. SHEVIN, Attorney General, et al., Relators,
v.
Richard (Dick) STONE, Secretary of State, State of Florida, et al., Respondents.
No. 42664.
Supreme Court of Florida.
August 10, 1972.
*19 Robert L. Shevin, Atty. Gen., and Daniel S. Dearing, Chief Trial Counsel, Dept. of Legal Affairs, Tallahassee, for relators.
DEKLE, Justice.
The original jurisdiction of this Court has been invoked by petition for writ of mandamus directed to The Honorable Richard Stone, Secretary of State,[1] and various co-respondents. Relator Robert L. Shevin, Attorney General, and co-relators seek to have Respondent Stone withdraw his certification of qualification of the candidacies of the co-respondents[2] on the ground of failure to comply with the requirements of Fla. Stat. § 99.012, F.S.A., the so-called "resign to run" law. We have heard all interested parties upon oral argument at a session of the Court specially called for such purpose in view of the urgency of the questions presented and the importance thereof to the people of the State of Florida in the impending elections and to the parties.

WRIGHT  MILLER
At the outset, this Court must sua sponte dismiss that portion of the petition relating to the Reverend Temperance E. Wright as a challenger to incumbent Gwendolyn S. Cherry for the State Legislature in Dist. 106 (Hialeah). Mrs. Cherry elected to pursue her remedy in the District Court of Appeal, First District, on August 1, 1972. The District Court denied relief in an opinion filed August 4, 1972, Case No. R-422, styled State ex rel. Cherry v. Stone, Secretary of State, and Temperance E. Wright, 265 So.2d 56 (Fla.App. 1st 1972), on the ground that mandamus was an inappropriate remedy. Mrs. Cherry then invoked the jurisdiction of the Circuit Court of Leon County and, since that *20 litigation is now being entertained in a court of competent jurisdiction, the jurisdiction of this Court has, necessarily, been ousted.
The Attorney General upon oral argument voluntarily withdrew the assertions as to Respondent Miller and conceded that he had duly complied with the law, was qualified as a candidate for the House of Representatives and should remain on the ballot.
Respondent Richard Stone, as Secretary of State, is charged under Fla. Stat. § 15.13,[3] F.S.A., with "general supervision and administration of the election laws," which laws include Fla. Stat. § 99.012(2), F.S.A., providing as follows:
"(2) No individual may qualify as a candidate for public office who holds another elective or appointive office, whether state, county or municipal, the term of which or any part thereof runs concurrent with the term of office for which he seeks to qualify without resigning from such office not less than ten days (10) prior to the first day of qualifying for the office he intends to seek. Said resignation shall be effective not later than the date upon which he would assume office, if elected to the office to which seeks to qualify, the expiration date of the term of the office which he presently holds, or the general election day at which his successor is elected, whichever occurs earliest. With regard to elective offices, said resignation shall create a vacancy in said office thereby permitting persons to qualify as candidates for nomination and election to that office in the same manner as if the term of such public officer were otherwise scheduled to expire; or, in regard to elective municipal or home rule charter county offices, said resignation shall create a vacancy which may be filled for the unexpired term of the resigned officer in such manner as provided in the municipal or county charter. This does not apply to political party offices."
By way of caveat we note that the 1971 session of the Legislature in "An act relating to transportation," Ch. 71-373, tacked on a § 10 amending § 99.012, effective October 1, 1971, to provide as follows:
"No person who serves as a member of any appointive board or authority without salary shall be in violation of this section by reason of holding any such office."
None of respondents is in this category.

BROWN  PRICE  KING
Respondents Brown, Price and King presently hold offices as set out supra, footnote 2, whose terms run concurrently, in part, with the terms of the offices which they seek. Members of the House of Representatives take office upon election.[4] Election Day is November 7, 1972. Their present offices terminate by virtue of new Article V, Fla. Const., F.S.A., on January 1, 1973. These three respondents contend that it is unnecessary for them to resign, maintaining that:
(1) The reasons for resigning are not present in their cases, particularly in that no successors to their present posts (which are terminating) are to be elected, so that they need not step aside to make way for the election of successors;
(2) Their present offices are not those which might be used to advance their candidacy for the Legislature;

*21 (3) It would be a useless and unnecessary act to resign in these circumstances;
(4) It would be an economic loss to the taxpayers and result in confusion to have successors appointed for the 54 days remaining from election on Nov. 7 to Jan. 1, if successful in their bids for office.
Additionally, Constable Price DID in fact timely resign on June 30. Respondents Brown and King have not resigned. Relator Shevin concedes Price's tender of a letter of resignation but contends that the fact that the resignation was delivered to the Clerk of Circuit Court in Constable Price's district in St. Petersburg (who in turn forwarded it on July 5 to the Governor and Secretary) did not comply literally with the requirements of the statute. We view the resignation as sufficient in these circumstances to satisfy the statute, particularly in view of the further admitted fact that later copies of the resignation WERE received and the Governor accepted the resignation without complaint or objection.
Accordingly, Constable Price should remain on the ballot.
As to Brown and King, the reasons above recited by them for not resigning where they understood the law not to apply, are cogent and persuasive as to why the "resign to run" law should not apply in these unusual circumstances, where their offices are terminating by virtue of a new constitutional amendment (Article V) voted upon favorably by the people subsequent to the resign to run law. This superceding action by the people's vote changes the circumstances applying to these terminating offices of Brown and King. These respondents acted in good faith and with good cause in not timely entering resignations in these particular instances with the doubt which existed in their cases. They still offer to resign if deemed necessary.
We accordingly hold as to Brown and King that they may continue as candidates upon forthwith tendering their resignations which (in accordance with the statute) "shall be effective not later than the date upon which he would assume office, if elected to the office to which he seeks to qualify." The other contingent effective times in the statute do not apply in these new circumstances brought about by Article V. These officers (respondents) could not, of course, hold more than one elective office and thus must submit resignations as outlined.[5]

BOYD
Respondent Boyd, Mayor of Pembroke Pines (Hollywood, Florida, area) is in a position similar to Respondent Price in that he resigned prior to the time required, i.e., June 28, BUT did not forward copies to the Governor and Secretary until AFTER the July 1 deadline to resign. Subsequent receipt of copies of the resignation within a reasonable time, however, is consistent with the provisions of court rules for the mailing of copies, with related matters of transmitting notice and with reason and logic. Such transmission will not void or nullify a timely resignation. The purpose of the notice is thereby adequately served and is within the comprehension of the statute's requirement and intention with respect to this provision.
Accordingly, Respondent Boyd did satisfy the resign statute and is entitled to remain upon the election ballot as a candidate for the House of Representatives, Dist. 96.

PATE
This brings us to the last of the respondents, Mayor Frank Pate of the City *22 of Port St. Joe as a candidate for County Judge, Gulf County. He asserts full compliance. The Attorney General simply denies timely receipt of copies of the Mayor's resignation by the appropriate officials, namely, the Governor and Secretary of State. Without dispute the actual resignation to the effective body (City Commission of Port St. Joe) was timely made on June 27. Copies were timely mailed (June 30).
Our same remarks above on the forwarding of the resignation to the Governor (and his acceptance of it) with copy to the Secretary apply here also. We find no deficiency which would deny this candidate (Pate) a place on the ballot.
The Attorney General urges that with the change in the statute (former § 331, Revised General Statutes (1920) in effect at the time of Davis v. Crawford, 116 So. 45 (Fla. 1928)) to present § 101.252 in 1953, the Secretary is vested with the responsibility of determining "who has qualified as prescribed by law"; ergo, the Secretary shall determine who has properly "resigned to run". It is not a simple administrative determination.
The resign law is not Secretary Stone's to administer by such a determination, any more than the campaign spending law. His charge under the constitution and statute does not extend to the substance or correctness or enforcement of a sworn compliance with the law  with "matters in pais", as it were. Once the candidate states his compliance, under oath, the Secretary's ministerial determination of eligibility for the office is at an end. Any challenge to the correctness of the candidate's statement of compliance is for appropriate judicial determination upon any challenge properly made, as here.
Accordingly, the several respondents, having satisfied the resign to run statute (with Brown and King forthwith presenting their resignations as aforesaid), the grounds for issuance of the writ of mandamus to remove their names from the ballot fail. The names of respondent candidates BROWN, PRICE, KING, BOYD and PATE shall remain upon the ballot as previously and correctly heretofore certified by Respondent Secretary.
The petition for the alternative writ of mandamus is hereby denied.
In view of the expediency required within the limited time available, the privilege of filing rehearings is dispensed with and this opinion is immediately effective.
It is so ordered.
ERVIN, CARLTON and ADKINS, JJ., concur.
BOYD, J., concurring in part and dissenting in part with opinion.
ROBERTS, C.J., dissenting with opinion.
McCAIN, J., not participating.
BOYD, Justice (concurring in part and dissenting in part).
I concur in that part of the opinion leaving the names of Pate, Price and Boyd on the ballot. They submitted resignations in good faith efforts to comply with the law, but their letters were not sent to the Governor and Secretary of State in a timely manner. This does not comply with the letter of the law but seems to satisfy the basic legislative intent. At this late date in the election campaigns, names of candidates should not be stricken from the ballot *23 whenever there is substantial compliance with law as in these resignations.
I dissent to that part of the opinion leaving the names of Brown and King on the ballot. They have clearly violated the letter and spirit of the law since their terms as constables would end fifty-four days after they would take office as legislators, if elected. This would be a clear overlapping of the terms of office. Since they did not resign and still hold their offices, there should be no basis to retain them on the ballot.
I agree with the majority opinion disposing of Miller and Wright.
As a general rule the law contemplates the Secretary of State is to accept qualifying instruments from anyone who swears he is eligible and pays the qualifying fees. This rule should not be construed to require the Secretary of State to place the name of a person on the ballot who is obviously not eligible and when such lack of eligibility is known to him as the state's chief elections officer. The burden of litigating the matter should be upon the one seeking to qualify.
The Attorney General is properly bringing this action as the Attorney for the State. Few matters in a democracy can be of greater importance to the people than those relating to qualifications of candidates for public office.
Accordingly, I concur in part and dissent in part.
ROBERTS, Chief Justice (dissenting).
The Resign-to-Run law was enacted by the legislature and its constitutionality has been upheld by this Court.
In my opinion, it is the responsibility of this Court to follow the law as written and I, therefore, must respectfully dissent from the majority view.
NOTES
[1] Fla. Const. art. V, § 4, F.S.A.: "The supreme court may issue writs of mandamus ... when a state officer, board, ... is named as respondent... ."
[2] GEORGE H. BROWN, JR., Constable, District 9, Duval County, qualified as a candidate for Member of the House of Representatives, District 20;

JOHN P. KING, Clerk, Criminal Court of Record, Duval County, qualified as a candidate for Member of the House of Representatives, District 17;
TEMPERANCE E. WRIGHT, Chairman, City of Miami Planning and Zoning Board, qualified as a candidate for Member of the House of Representatives, District 106;
FRANK PATE, Mayor of the City of Port St. Joe, qualified as a candidate for County Judge, Gulf County;
RICHARD A. PRICE, Constable, District 5, Pinellas County, qualified as a candidate for Member of the House of Representatives, District 59;
WILLIAM F. MILLER, Councilman, City of Boca Raton, qualified as a candidate for Member of the House of Representatives, District 83;
CHARLES W. BOYD, Mayor, Pembroke Pines, qualified as a candidate for Member of the House of Representatives, District 96.
[3] "The secretary of state shall have general supervision and administration of the election laws, corporation laws and such other laws as are placed under his office by the legislature and shall keep records of same."

See State ex rel. Fair v. Adams, 139 So.2d 879 (Fla. 1962); State ex rel. Taylor v. Gray, 157 Fla. 229, 24 So.2d 492 (1946).
[4] Fla. Const. art. III, § 15(d), F.S.A.
[5] Fla. Const. art. II, § 5(a), F.S.A.