KENNON, Judge.
Alleging that he was totally and permanently disabled as the result of an accident in the course of his employment as a truck driver with defendant, plaintiff filed suit for four hundred weeks compensation and. for medical expenses.
Defendant admitted plaintiff’s employment but denied that he was involved in: an accident within the meaning of the compensation statute.
The District Court found for plaintiff' and rendered judgment for 65% of plaintiff’s wages during disability, not to exceed four hundred, weeks. Defendant has. appealed.
Defendant is the owner and operator of the Frank Wholesale Company, which is. engaged in the business of selling and delivering merchandise to retail merchants, in the Shreveport trade territory. For several months prior to the alleged accident, and on the day of the accident, plaintiff worked for defendant as a truck driver. His duties included the handling and loading of various articles of merchandise, including one hundred pound sacks of feed. His testimony is that on January 12, 1949, he was alone in the plant, engaged in loading one hundred pound sacks of dairy feed; that, after he had hauled out a load of ten sacks and had placed three sacks of the second load of feed on the float, he stooped over to pick up another sack, lifted it, and when he was about half way up, he “got a hurting” in his back and had to drop the feed, and “couldn’t hardly raise up for awhile.” He testified that a colored boy helped him finish loading; that he didn’t think his back was hurt “as bad as it was *663 that he told Mr. Carraway, the foreman, that he had hurt his hack, the reply being, .that “he hated to hear that;” that he ■continued to work that day (Wednesday), Thursday and Friday, but used the colored porters to help him with the loading; that on Saturday he did not serve as truck driver, but was asked to go back and unload salt from a box car; that after he had picked up four or five boxes of salt, he ■was unable to carry on; that he told a man In the office that he “had to go home and might have to see a doctor;” that he sent him to the stockroom and told him to work on, “without doing anything,” until Saturday noon. He did not return to work 'on the following Monday and on Tuesday his '.brother-in-law called defendant’s office to :report that plaintiff was suffering. Defendant sent an ambulance which carried him to a sanitarium where he was treated by Dr. M. S. LeDoux. Later he was treated by Dr. Carson Reed and examined by Dr. Gene Caldwell.
Plaintiff was in the hospital on two different occasions and after his second release a compromise settlement, under the terms of which plaintiff was to be paid $360, ■was prepared and presented to the First Judicial District Court, which refused to ■•approve the settlement even though plaintiff i(who testified that he was told by the .adjuster that he would soon be able to go to work) Indicated a willingness to accept. According to this petition defendant had furnished medical care to plaintiff, including the services of Doctors LeDoux and Reed, and had paid ambulance and hospital ••expenses amounting to a total of $291.28.
Defendant denied that the accident occurred to plaintiff as alleged and intro-, •duced several of plaintiff’s fellow employees who testified that some days prior to the alleged injury, the plaintiff came into the Del Rio Bar and stated that he had been "having trouble with his back since he had '“turned a truck over in the Army.” Plaintiff’s fellow employee on the truck testified that he observed plaintiff on one occasion carrying, the sacks of feed in front of him. and when asked what was the matter, replied that he had. a bad back.
Plaintiff denied making any statements to his fellow employees that he had previously suffered from a back injury and introduced a number of his fellow employees who testified that he did the heavy work prior to January 12th and after that date he complained of having been injured and that he did not perform heavy work between the time of his injury and noon the following Saturday, when he .left the employ of defendant.
Dr. Caldwell’s statement as to the condition of plaintiff is contained in the following questions and answers from the record :
“Q. What was your finding as a result of the x-rays? A. That he had a complete spondylolisthesis of the 5th lumbar vertebra, which means that there is a defect in a portion of the vertebra which permits the 5th lumbar vertebra to slip forward on the 1st sacral segment, or on the pelvis. It leaves the entire spinal column unattached to the pelvis, except by liga-mentous support — there is no bony support to it.
“Q. From your examination can you state whether or not the patient’s condition at that time was due to a recent injury or one of old standing? A. The spondylolis-thesis is of congenital origin, and he was born with that defect in his back. He had probably sustained an acute strain, superimposed on that, because this type of back, with this defect, is peculiarly liable to strain, since it lacks its normal bony support.
“Q. Would such a congenital condition disable a person of itself? A. Not of itself, no, sir.
“Q. In other words, with this congenital condition, to become disabled, he would have to suffer a strain or some blow or something of that nature, or some injury, to further that condition to where he would be disabled? A. That is usually the case.' The patient áoesn’t know that he has such a defect until symptoms arise.
“Q. In your opinion, Doctor, could lifting heavy objects cause such a strain as to disable a person with a spondylolisthesis ? A. Yes, sir.”
*664 Dr. Caldwell further testified that an examination disclosed a muscle spasm involving both lumbar groups of muscles, which did not shift with the shifted body weight and there was a moderate decrease in the normal motion of the lumbar spine. He said he did not believe plaintiff would be able to do any type of work requiring heavy lifting and that an operation involving a spinal fusion would be necessary before this condition could be cured.
This testimony by Dr. Gene Caldwell is the only medical testimony in the record. Defendant’s counsel in closing his case noted that he 'dosed “with the exception of the testimony of Doctors LeDoux and Reed,”'and at the conclusion of the testimony, the District Court stated: “Let the matter be continued for taking the testimony of Doctor LeDoux and Doctor Carson Reed, and such rebuttal as the plaintiff might have.”
The record does not contain the testimony of Dr. LeDoux or Dr. Carson Reed. Since Dr. LeDoux treated plaintiff the Tuesday following the alleged injury, his testimony might have been of value in enabling the Court to consider the defense that plaintiff’s injury was chronic or of long standing. It is logical to'presume that the testimony of Doctors LeDoux and Reed, who treated Skyles at the request of defendant, and for whose testimony the District Court kept the case open at the request of defendant, would not have been unfavorable to plaintiff.
There is much conflict in the testimony, of witnesses for plaintiff and defendant. However, the record does establish beyond doubt that plaintiff actually performed his duties as a truck driver, including the handling of heavy merchandise, for several months prior to the date on which he testified the injury to his back occurred. Again, while there is a conflict as to whether or not plaintiff notified his foreman on the day of his injury and again on the following Saturday, there is no doubt but that defendant was notified of plaintiff’s condition on the Tuesday following the date of the alleged accident, and that, when carried to the hospital, plaintiff was treated by physicians furnished by defendant and was found to be suffering from a serious back condition. The testimony of Dr. Caldwell establishes beyond doubt that on April 21, 1949, plaintiff’s condition was such as to make him permanently and totally disabled from doing heavy work and that this condition could only be remedied by a serious operation.
There is ample testimony in the record to sustain the finding for plaintiff made by the District Court. In cases where the testimony is conflicting and the decision a close one, and there is no manifest error, it is the duty of an appellate court, under the established jurisprudence of this state, to affirm the decision of the trial Court.
The judgment is affirmed, with costs.