45 So.2d 418 (1950)
RIVERO
v.
LEAVEAU et al.
No. 19403.
Court of Appeal of Louisiana, Orleans.
March 27, 1950.
Ernest A. Carrere, Jr., and Edward F. Stauss, Jr., New Orleans, for appellants.
William J. Guste and James M. Colomb, Jr., New Orleans, for appellee.
REGAN, Judge.
Plaintiff, Jules Rivero, an employee, brought this suit under the Workmen's Compensation Act, Act No. 20 of 1914, as amended, against his employers, N. V. Leaveau and V. A. Leaveau, doing business under the trade name of Liberty Welding & Iron Works, and their compensation Insurer, The Western Casualty & Surety Company, in which suit the plaintiff alleged that he was permanently and totally disabled as of January 6, 1948, while employed by Liberty Welding & Iron Works.
The defendants answered denying plaintiff's claim for compensation on the ground that plaintiff did not sustain an accident in the scope and course of his employment and, in the alternative, pleaded that plaintiff was also simultaneously an employee of the New Orleans Brewing Company, Inc., and, therefore the New Orleans Brewing Company, Inc., should be made a party to *419 this suit and ultimately be forced to contribute towards any judgment of compensation rendered. An order impleading the New Orleans Brewing Company, Inc., was issued by the lower court, to which order the New Orleans Brewing Company, Inc., filed exceptions of no right or cause of action and the court, a qua, properly dismissed the New Orleans Brewing Company, Inc. as a party defendant to these proceedings.
After a trial on the merits judgment was rendered in favor of plaintiff and against the defendants condemning the defendants to pay unto plaintiff compensation in the sum of $20.00 per week for a period not to exceed four hundred weeks, commencing January 6, 1948, together with 5% legal interest on all payments due and unpaid and that defendants pay all costs of the proceedings including the expert fees of Drs. Karr, Simon and Battalora, which fee was fixed at $50.00 each. Defendants applied for and were denied a rehearing. From this judgment defendants have prosecuted this appeal and plaintiff has answered the appeal by praying that the judgment be amended to include his medical expenses amounting to $234.59, and that as amended, the judgment be affirmed.
The record reveals that the plaintiff, Jules Rivero, a man of approximately thirty-three years of age, had been employed by the Liberty Welding & Iron Works, Inc., for approximately four and one-half to five years prior to January 6, 1948, the day on which he allegedly was injured and ceased working for defendant, Liberty Welding & Iron Works, Inc. Simultaneous with his employment by defendant he was also employed in the evening as a welder by the New Orleans Brewing Company, Inc., since 1944, but terminated that employment as of December 21, 1947.
On January 6, 1948, plaintiff was welding ammonia coils weighing, according to the divergence of opinion, from fifteen hundred to four thousand pounds, which coils were to be used in freezing units, and while they were suspended from a chain hoist, it was nonetheless necessary for plaintiff to push the coils around while so suspended in order that they would be placed in a more advantageous position to facilitate the welding thereof. Moving of the coils obviously required physical effort on the part of the plaintiff. This fact was corroborated by Alvin Canella, a fellow-employee, and by V. A. Leaveau, one of the partners in the Welding Company. Shortly before noon on January 6, 1948, plaintiff suffered, what he described and which defendants have denied, a severe pain in his back, the intensity of which caused him to immediately cease work, and leave his shield and gloves where they were. He secured a ride from defendant's place of business to the street car from Canella, who testified that plaintiff ceased work at noon because his back was hurting him.
There is no evidence in the record that plaintiff ever reported an accident or any unusual ocurrence to any office employee of defendant nor did he complain of any accident or any unusual occurrence on the said date to Leaveau. After returning to his home these severe pains persisted and, on January 7, 1948, plaintiff called his family physician, Dr. Alex M. Powe, who treated plaintiff at home, but when the severity of the pain continued, hospitalization was prescribed and, on January 14, 1948, plaintiff was admitted to the Lakeshore Hospital, where he remained until January 26, 1948. X-rays were taken of plaintiff's back which disclosed an injury between the first and fourth lumbar vertebrae. Other medication was administered at this time which did not appreciably alleviate the pain.
Dr. Powe testified that he practiced primarily, obstetrics and gynecology, but that he had treated plaintiff for pains in his back on October 2nd and 18th, 1946, and at that time he was of the opinion that plaintiff's trouble was a sacro-iliac condition. He admitted, however, that he was incompetent to diagnose a disc herniation since orthopedics are outside of his field. He further testified that plaintiff had told him that the pain in his back on January 6, 1948, had occurred rather suddenly while he was working, which necessitated his abrupt termination of his work for that day.
On or about February 2, 1948, defendants communicated with plaintiff to determine *420 why he had been absent from his employment and he replied that he was having some difficulty with his back and that the cause was unknown to him. Defendant then, as is customary and usual, forwarded to its compensation insurer, a formal accident report. In the report no reference is made to any accident and the cause of plaintiff's alleged injury is shown as being unknown.
Mr. Alvin de la Houssaye, at that time employed as an adjuster for Western Casualty & Surety Company, called upon plaintiff who explained to de la Houssaye that he did not know of any specific accident which he had while in defendant's employ. de la Houssaye reduced plaintiff's statements to writing. This statement is in the handwriting of de la Houssaye and is signed by plaintiff.
On February 23, 1948, de la Houssaye referred plaintiff to Dr. George C. Battalora, who examined plaintiff and discussed with him his case history. This discussion was likewise reduced to writing. In this statement there was no mention by plaintiff of the happening of an unexpected or unforeseen event or of any sudden or violent action which manifested objective symptoms relative to an injury by an accident. Dr. Battalora diagnosed plaintiff's ailment as intervertebral disc herniation, and he was of the opinion that the majority of ruptured discs are the result of heavy lifting particularly in an awkward position.
Plaintiff, according to his testimony, remained in a state of continuous severe pain which subjectively appeared to grow worse as time progressed, and he then called upon his uncle, Dr. H. Theodore Simon, an orthopedic surgeon, who diagnosed plaintiff's back ailment as acute sciatic syndrome due to an intervertebral disc injury in the lower lumbar vertebrae, and, in his opinion, the rupture of the disc occurred while plaintiff was working on January 6, 1948. Dr. Simon arranged for plaintiff's admission to Charity Hospital in the City of New Orleans on April 4, 1948, where conservative treatment was administered in the form of traction to both lower extremities in an effort to obviate the necessity of an operation. The treatment was unsuccessful and plaintiff was, thereafter, referred to Dr. Howard Karr, another orthopedic surgeon, who, on April 30th, 1948, performed a laminectomy on plaintiff's spine and during the course of the operation found a ruptured inter-vertebral disc with extreme protrusion of the disc into the spinal canal which was, of course, removed. Dr. Karr was of the opinion that ruptured discs are usually associated with lifting and that plaintiff gave him a history of lifting objects during the course of his employment, but no date of injury or trauma was incorporated in his case history. Ten days after the operation was performed plaintiff was discharged from the hospital, but was readmitted again on May 14, 1948, because of incessant back pain and spasms of the paraspinal muscles. In order to relieve plaintiff's pain he was placed in a plaster jacket on May 25, 1948, and, on June 8, 1948, he was discharged from the hospital in a cast and he was still under the treatment of Dr. Simon, wearing a steel brace, and unable to perform any physical labor, at the time of the trial of this matter in the court, a qua.
Plaintiff testified that, at the insistent suggestion of Dr. Accardo of Charity Hospital, he attempted to perform light labor, but that he experienced such intense pain that he terminated these efforts. Plaintiff reported the result of his efforts to Charity Hospital Service and was advised by them not to do any more work.
Defendants contend that the history of plaintiff shows that he sustained no compensable accident; that the disc herniation which he eventually suffered was a long standing condition which was not caused or activated by any event occurring during his employment by defendant, Liberty Welding & Iron Works, and he had no accident while working for the said company and, therefore, is not entitled to compensation under our jurisprudence.
Plaintiff maintains in opposition thereto that there was no accident in the sense that plaintiff was struck by something or that he stumbled or fell, but that an accident within the meaning of the Workmen's Compensation Law means also a giving way of *421 any portion of the laborer's body while at work.
The question posed by virtue of the pleadings and evidence adduced herein is whether the plaintiff was injured as a result of an accident within the scope and meaning of the Louisiana Workmen's Compensation Act?
We have been impressed by the excellency and intellectual integrity of both briefs filed herein by counsel for the respective litigants and we feel that they justly deserve to be complimented by this Court.
At the inception of this opinion, it might be well to emphasize that there is no dispute between counsel for plaintiff and defendants that plaintiff did sustain a disc herniation.
The Legislature of Louisiana incorporated the following definition of an "accident" in the Workmen's Compensation Act: "The word `Accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury." Act No. 20 of 1914, § 38, as amended by Act No. 38 of 1918.
We conclude from the evidence contained in the record, that plaintiff had suffered from October, 1946, to the date of the alleged accident, January 6, 1948, with pains in his back and we are, therefore, confronted with the specific and more fundamental question of whether this case possesses the legal requirements (as evidenced by the philosophy of our compensation jurisprudence) necessary to constitute an accident and injury which is compensable, where, admittedly, heavy lifting or other strenuous efforts, although usual and customary in the trade, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition.
Counsel for defendants lay great stress on the following statement which was secured by de la Houssaye, from plaintiff, on February 9, 1948, which we quote:
"Sometime in the early part of 1946, I started having trouble with my back. I would feel pain and ache in the lower part of my backthis would pass from 2 days to a week at a time, then the pain would go away of its own accord * * *.
"X-rays were taken by Drs. Menville and Ane, and I do not think that they found anything wrong thenthis pain continued through the year 1947 and caused me to lose some time from work. Finally, on January 6, 1948, I was forced to leave work (while on the job at Liberty Welding) in the middle of the day. The pain and discomfort was so bad that I couldn't continue working. I have not been back to work to either place, since.
"The Doctor (Dr. Powe), January 15, 1948, told me that I must have hurt myself. I cannot say how, when or where this injury occurred. It could have resulted from heavy lifting during the last two years, while working either for Liberty Welding or New Orleans Brewery. My job at New Orleans Brewery was the same as that at Liberty Welding, and I had to lift and remove heavy pieces there just as I do at Liberty Welding & Iron Works. I cannot recall any particular occasion when I felt pain or felt anything pull loose, after lifting." (Italics ours)
Counsel for defendants further contend that plaintiff repudiated this statement when he testified at the trial of this matter that shortly before noon on January 6th, 1948, while he was trying to shove a coil from a crouching position he suddenly suffered such pain in his back that he could work no longer. However, a reading of this statement together with the testimony on behalf of plaintiff, adduced in the trial court, in our opinion, resolves the apparent conflict of plaintiff's obvious misconception of the definition and elasticity of the word "accident" under our jurisprudence. There was no injury in the sense in which the word "accident" is usually understood by laymen, as involving violent, unforeseen and undesigned contact with an animate or inanimate object or that he fell and thereby injured his back.
*422 It is our opinion, that, unknown to plaintiff, on January 6, 1948, he suffered a ruptured intervertebral disc. All that plaintiff was cognizant of at this time was that the pain in his back was more intense and excruciating than he had ever experienced heretofore.
This Court decided a case analogous to the one which we are presently considering, which involved a signed statement by the plaintiff together with a back injury, in 1938. Crouchet v. George H. Leidenheimer Baking Co., La.App., 184 So. 605, 606 and we quote therefrom:
"J. K. Drury testified that he obtained a statement from Crouchet which he composed for him `in the usual manner of an insurance adjuster' by which he meant to say that though written by him it was read back to Crouchet before he was asked to sign it. In this statement Crouchet is quoted as saying: `When I injured my back on April 6, 1937, I don't know whether I had an accident which hurt my back on April 6, 1937, but it had been hurting me since I was injured in 1935 and I couldn't work after April 6th, 1937'.
"The records of the Charity Hospital show that plaintiff was first treated by that institution on May 10th, 1932, for a strained back, and that he continued to receive treatments, at intervals up to December 13, 1937, chiefly for his back, but sometimes for other ailments. On November 19, 1934, when he was first referred to Dr. Fenner, the following notation appears in the records: `I find no sacro-iliac signs. He is wearing a pelvic belt. I order salicylates.' Plaintiff's back is not again referred to in the hospital record until April 14, 1937, when the following notation appears: `Treated in Acc. Room 4-8-37. Sprain lower back, strapped. To return for observation.'
"Defendant insists that upon this record there is no evidence of any accident having occurred in the course of plaintiff's employment and, in the sense in which the word `accident' is usually understood as involving violent contact with an inanimate object, no accident is shown to have happened. We believe, however, that the evidence sufficiently demonstrates that on April 6th, 1937, plaintiff sprained or strained his back while in the employ of the defendant bakery. It also appears that in the performance of his duties he was required to stoop over and it may have been that by reason of some sudden movement his back was injured or some previously existing weakness or malady in that region aggravated. Be that as it may, we are convinced that plaintiff was accidentally disabled in the course of his employment. He is, according to the testimony of two doctors, suffering from a sacro-iliac disturbance. It is true that Dr. Ficklen does not agree with these doctors, but without making any invidious distinction, we observe that the preponderance of the medical testimony is opposed to Dr. Ficklen's opinion. We believe that the plaintiff should recover."
The interesting lay and medical evidence which has been adduced herein indicates that there was no "accident" within the literal definition of the word or in the sense thereof; i. e., that plaintiff was struck or inadvertently injured by some animate or inanimate object; or that he suffered an "accident" in any of the other usual, ordinary and accepted ways in which we commonly associate our ideas of an accident.
In view of the language used and the conclusions reached in the case of Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625, 626, decided by the Supreme Court in 1946, it appears that the jurisprudence is well settled with respect to the fact that an "accident" within the meaning of the Workmen's Compensation Law is interpreted to be the giving way of any portion of the laborer's body while engaged in his work. In that case it was said:"Since this case does not involve an accident causing external injuries or producing objective symptoms, we must look to the testimony of the medical experts to determine whether this is one of those cases that comes within our well-settled jurisprudence that the legal requirements are present to constitute an accident and an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, although *423 usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition. See, Craft v. Gulf Lumber Co., 151 La. 281, 91 So. 736; Hicks v. Meridian Lumber Co., 152 La. 975, 94 So. 903; Jackson v. Travelers' Ins. Co., 180 La. 43, 156 So. 169; Wright v. Louisiana Ice & Utilities Co., 19 La.App. 173, 138 So. 450; Richey v. Union Paving Co., La.App., 151 So. 657; Brister v. Miller, La.App., 178 So. 284; Ozbolt v. Weber-Kind Mfg. Co., La. App., 193 So. 383; and Murray v. Mengel Co., La.App., 9 So.2d 818".
In O'Connor v. American Automobile Insurance Co., 32 So.2d 624, 628, the Court of Appeal for the Second Circuit said: "It is well settled in our jurisprudence that the protection accorded by the compensation Act of Louisiana against injury by accident comprehends and includes the giving way of affected parts of the body while at work, even though the disability was not the immediate result of an unusual strain or physical effort. Hill v. J. B. Beaird Corp., La.App., 19 So.2d 295 and cases therein cited."
In Stiles v. International Paper Co., 39 So.2d 635, 636, we find:
"We think the Court erred in maintaining defendant's exception. The direct question here involved was discussed in the opinion of this Court in Dortch v. Louisiana Central Lumber Co., La.App., 30 So.2d 792, 796, in the course of which Judge Taliaferro made the following observation:
"`It is now well settled that to constitute an accident within the meaning of the Workmen's Compensation Law in cases where the work of the claimant entails regularly heavy physical effort, it is not necessary that the injury from which disability follows be the result of unusual physical effort. If a diseased organ gives way while the laborer is performing his usual and customary heavy duties, and disability results, it is compensable. * * *'".
We are convinced that the evidence indicates that even though plaintiff, prior to January 6, 1948, had, on various occasions, suffered as a result of some defective spinal condition, it was on that day and while he was at work that this condition became so acute that he could not thereafter perform the duties of his employment.
It is, therefore, unimportant whether he sustained the complete rupture at that time or whether his previous defective spinal condition came to a focus at that time as a result of the work which he was doing. In either event there is liability in defendants.
Counsel for both plaintiff and defendants orally informed this Court that it was agreed and we find the stipulation in the record, that plaintiff incurred medical expenses amounting to $234.59, and that, therefore, any award in favor of plaintiff and against defendants should include this item of damage. The court, a qua, through inadvertence omitted this item from its judgment and plaintiff has answered the appeal requesting that the aforementioned amount be included in the judgment of this court, consequently, and
For the reasons assigned the judgment appealed from is amended by allowing to plaintiff, Jules Rivero, the sum of $234.59, and, as thus amended, it is affirmed.
Amended and affirmed.