McBRIDE, Judge.
Victor Williams was killed on February 28, 1948, while working within the course and scope of his employment with defendant, Armour Fertilizer Works, Inc. His widow, Jeneva Bernard Williams, from whom he had been extra-judicially separated for 25 years, claiming that she was actually dependent upon Williams for support, brought this suit against defendant under the provisions of Act 20 of 1914, as amended, seeking to recover 300 weeks compensation at the rate of 37% per cent of the weekly wages earned by Williams. Her suit was dismissed by the lower court, and she has appealed.
Section 8, sub-section 2, paragraphs (A), (B), (D), and (K) of the act as amended by Act No. 242 of 1928, pages 358, 359, 361, Dart’s La.Gen.Stat. 4398, is the controlling law of the case. These provisions of the statute establish the rule that where a wife is living with her husband at the time of the accident and death, there arises a conclusive presumption that she was wholly and actually dependent upon his support, but paragraph (D) declares that: “ * * * In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death; * * *»
Therefore, the sole question for decision, one of fact, is whether plaintiff, who bad been separated from the deceased workman, was actually dependent upon him for support.
It is undisputed that Victor Williams and Jeneva Bernard were married in 1921 and lived together for a few years in Shrews-bury in Jefferson Parish. Jeneva Bernard separated from Williams about 25 years before his death, and moved to New Orleans, where she was still living at the time of his death. Their daughter, who is now married, was reared by 'relatives of *641 Victor Williams in a small Negto settlement at Shrewsbury. Williams, after the separation, continued to reside in Shrews-bury, and his brother and three. sisters .all lived within . a few blocks of him. He was a man about 65 years old, and for 11 years prior to his death he had lived with Mary Neal, a Negro woman about 35 years of age, in a room in a small house which Mary Neal claims to own, and the mother of Mary Neal, and a child who, had been abandoned to Mary Neal by its parents, occupied the other room in the house. Previously, Williams had lived with one or two “common law wives.”
Jeneva Bernard testified that Victor Williams came to New Orleans to see her at intervals of from one to two weeks, and that he would spend one or more nights with her on these visits. She stated that she is in a poor state of health, and was entirely dependent upon him for her support, and that if he came every week he would give her from $12 to $15, and that if he came every other week he would give her from $18 to $20. Such relationship and arrangement, she testified, had existed from the inception of the separation. Two witnesses were produced in an effort to corroborate her statements, one being her aunt, who claim that they knew of Williams’ visits to Jeneva Bernard, and of his having given money, to her.
The testimony of Orena Brumfield, one of plaintiff’s witnesses, is of doubtful veracity, and its validity is brought into serious question because of a statement which, it is said, she made after leaving the witness stand. Mary Neal and Charley Williams, the brother of Victor Williams, both testified that Orena Brumfield in effect stated that she knew nothing of the specific details of the case about which she had testified, and that she hoped she would not have to return to court. She denied having made such statement.
On the other hand, several defense witnesses testified that Williams at no time mentioned to them that he supported his wife, or contributed to her upkeep, and that as far as they knew he always remained in Shrewsbury, and that if he had spent such time in New Orleans, as was testified to by Jeneva Bernard, they were in a position to have known of it. Charley Williams further stated that on several occasions when Jeneva Bernard visited Shrewsbury after the separation, Victor Williams refused to have anything to do with her, and would not even speak to her.
The record discloses that at the time of Williams’ death Mary Neal was working in Chicago, but that Williams was, and had been, actually supporting Mary Neal’s mother and the child who lived in the house with them, and that he also contributed to the upkeep of one of his sisters.
Upon the death of Williams, an investigation was launched by Armour Fertilizer Works, Inc., to learn to whom workman’^ compensation would be payable as a result of Williams’ death. The investigation-was conducted by Mr. Al. C. Terrebonne, defendant’s officer manager, and by defendant’s attorney, and during its course Jene-va Bernard called at the office of Armour Fertilizer Works, Inc., and stated that she was the lawful wife of Williams. When. questioned regarding her - separation from Williams, and as to her dependency upon him, she admitted to Mr. Terrebonne and the attorney that she was not -dependent upon Williams for support: The statement attributed to her was denied by plaintiff, but her testimony bearing upon that point is not at all impressive. .
Jeneva Bernard maintained that Williams had made the weekly or semi-weekly contributions for many years, dating back as far as the time of the separation. Records of Armour Fertilizer Works, Inc., were produced, which reflect that Williams did not earn as much as $15 per week until a few years ago, and that he had been earning $36.40, which was his weekly pay at the time of the accident, for only a relatively short period of time. It is beyond our understanding how Williams, who had several concubines since his separation from Jeneva Bernard, and who supported or contributed to the support of several persons, would have been able or willing to give from $12 to $15 each week *642 to Jeneva Bernard out of his meager earnings. Moreover, it is' just as inconceivable that Williams, who had been separated from Jeneva Bernard for 25 years, and had refused to have anything to do with her or even speak to her, and who lived with several other women in the interim, would have been-so solicitous of her well-being that he would contribute the major portion of each week’s pay to her.
There is another circumstance appearing from the evidence, which is most damaging to plaintiffs cause. The two witnesses produced by plaintiff, while stating that they were acquainted with Williams and knew of his visits to Jeneva Bernard, and of his having given money to her, could not agree on a description of him. Orena Brumfield said he was a “kind of stout” black man of medium height, and Stella Hartwell, plaintiff’s aunt, described him as “kind of slender * * * short and had a bullet head and black and old.” The evidence unmistakably shows Victor Williams to have been a thin man about six feet tall.
In view of the separation, the law imposed upon Jeneva Bernard the burden of proving by a preponderance of evidence that she was actually dependent upon Victor Bernard for her support, which burden, in our opinion, she has not met. In his written reasons for judgment, the trial judge observed that the testimony of plaintiff’s witnesses is vague and indefinite, especially as to the amounts which plaintiff claims she received from Williams, and his conclusion was that the evidence produced by defendant was. the more probable, and he rendered judgment accordingly. We not only fail to perceive manifest error in the judgment, but our opinion is that the evidence fully justifies the conclusions reached by the lower court. In a compensation case, as in every other case, an appellate court should not disturb the findings of. the lower court as to facts, unless the judgment is manifestly erroneous,, which is not the case here.
Plaintiff’s counsel has directed our attention to several cases, in each of which a wife who was separated from- the workman at the time of the accident and death, was awarded'compensation, and he argues that they are most persuasive and should govern the'adjudication in the instant case. We have carefully examined the cited cases, and we do not think they have application here, as the facts therein differ from those prevailing in the case -under consideration, particularly as in none of the cited cases was the separation between the spouses of so long a duration as that which existed between plaintiff and Victor Williams.
The judgment appealed from is affirmed.
Affirmed.