81 So.2d 36 (1955)
Albert J. MICHEL, Plaintiff-Appellee,
v.
The MARYLAND CASUALTY COMPANY, Defendant-Appellant.
No. 3996.
Court of Appeal of Louisiana, First Circuit.
May 17, 1955.
*37 Mouton, Champagne & Colomb, Lafayette, for appellant.
Linus P. Terrebonne, Morgan City, for appellee.
TATE, Judge.
Plaintiff-employee, Albert J. Michel, brought suit against the Maryland Casualty Company, compensation insurer of his former employer, for total and permanent disability benefits resulting from an accident which allegedly occurred on or about September 20, 1953. Michel also sought penalties and attorneys' fees for defendant's arbitrary refusal to pay compensation.
The defense is that no accident happened while plaintiff Michel was employed by defendant's insured; and that if Michel was so injured, he has completely recovered.
Judgment after trial on the merits held plaintiff to be permanently partially disabled and awarded compensation to Michel at the rate of $13.52 per week from the date of the accident during disability of the plaintiff, with legal interest, not to exceed 400 weeks in all. The judgment did not award penalties or attorneys' fees.
Defendant appealed from this judgment, and plaintiff answered the appeal, praying the judgment be amended to increase the weekly compensation payments to the statutory maximum of $30 per week, not to exceed 400 weeks, and to allow penalties and attorneys' fees.
In its brief, defendant urged that plaintiff's answer to the appeal cannot be considered by us, since not timely filed. This is based upon the answer to the appeal being first filed with Clerk of Court, St. Mary Parish, for inclusion with the record of the entire proceedings below, which entire record was filed in this Court on November 22, 1954. While the better practice would be to file the answer to the appeal with the Clerk of this Court after the appeal is lodged here, we feel that since actually the answer to the appeal was filed in this Court on November 22, 1954, probably this would constitute timely filing since appeals and answers to appeals are favored in law. But furthermore the answer to the appeal is in addition marked filed by the Clerk of this Court on March 8, 1955, which was the date of the oral argument herein and also the first day of the New Iberia session where this appeal was heard; this Court has interpreted Article 890, Code of Practice, in conjunction with the rules of this Court to permit filing an answer to an appeal at any time before argument and within the first three days of the regular *38 session of the Court, Fawvor v. Crain, La. App., 1 Cir., 6 So.2d 227.
The District Court, who saw and heard all the witnesses herein, found as a fact that the accident had occurred as testified to by plaintiff: While in the course of his employment carrying a heavy four-hundred-pound spreader bar with the assistance of two co-employees, plaintiff-Michel felt a sharp pain in his back and had to let the bar down to the ground. These two former co-employees testified and corroborated Michel's testimony that while carrying the spreader bar, Michel grimaced, apparently suffered pain, and let the bar down for two or three minutes, complaining that his back was hurt. They also corroborated Michel's testimony that he was able to continue performing his duties for about two weeks after the accident, although he occasionally complained of a hurting in his back.
The record shows that following this accident, after Michel had continued working for approximately two weeks, on a Sunday while attending a movie during which his infant child sat on his lap, Michel was unable to rise due to stiffness and pain in his right leg and back. He reported in the next day or two to his personal physician and was treated by him and by another private physician, who according to plaintiff felt he had arthritis. The pain continuing, plaintiff went to the Veterans Administration Hospital, where his trouble was diagnosed as a ruptured intervertebral disc. Michel was hospitalized there for approximately 7 weeks under traction, improved sufficiently to return to work for approximately 10 days but was unable to continue working, reported back to the Veterans Administration Hospital subsequently where a myelogram was taken. An operation was subsequently performed upon him in the Veterans Administration Hospital by Dr. Howard H. Karr, New Orleans, neurosurgeon, who surgically removed in his words "a tremendous disc at the fifth lumbar inter-space" on May 24, 1954.[1]
The record indicates that following this operation, Michel continued to suffer pain in his back and leg and was unable continuously to do even work such as mopping without suffering pain and being forced to desist therefrom. These complaints of pain in the opinion of Dr. Charles E. Perez, Jr., general practitioner were probably "due to sciatic nerve irritation possibly caused by scar tissue at the site of the operation pressing on the nerve". This physician stated: "At operation certain tissues were removed from his body. These should be replaced by scar tissue, but I would not feel that the back would be as strong at that point as it was before the accident. I would expect the patient to have a permanent weakness at that point. This is my opinion as a general practitioner. Records of such cases indicate that almost 50 per cent of such cases who have surgical treatment continue to have disabling or at least discomforting pain. I could not prophesy what degree of recovery this particular patient will have. I do not see how anyone can." This opinion was dated September 21, 1954, or the day before the trial on September 22, 1954. Based upon the opinion of this general practitioner as to the probable cause of plaintiff's disability, and accepting the plaintiff's complaints of pain upon performance of even slightly heavy duties, as corroborated by his wife's testimony, the District Court found that Michel was disabled as of the date of the trial from performing the heavy duties he had formerly performed as dragline operator. Although the operating specialist found his operation had been a complete success, we feel that the District Court's finding of residual disability *39 based on both lay and medical testimony is adequately supported by the evidence. See Cobb v. A. G. McKee & Co., La.App., 1 Cir., 45 So.2d 432, for almost identical situation concerning residual disability after operation for ruptured disc, even involving the same neurosurgeon.
In support of its defense that no accident had occurred, defendant produced two former office employees of the employer who testified that when questioned if his disability arose from employment when Michel stopped working to go to the Veterans Administration Hospital, Michel replied he did not know when or how an accident had occurred and failed to fill out an accident report form. Also, two other former co-employees testified that Michel never complained to them of an accidental back injury. This testimony is not unduly impressive, since as not contradicted by the record, Michel felt his back condition was due to non-traumatic arthritis when he left work to go to the Veterans Administration Hospital, where for the first time due to correct medical diagnosis he was able to relate the delayed disabling symptoms to a traumatic cause. See Morgan v. Rust Engineering Company, La.App., 52 So.2d 86.
As a matter of fact, Michel testified that he did not remember what object he had been lifting that caused the pain until interviewing his two co-employees some time after the accident, who then reminded him it had been a spreader bar. See Rivero v. Leaveau, La.App., 45 So.2d 418, where very similarly employee suffering ruptured disc reported no accident had occurred and cause of disability was unknown to him until at least six weeks later, when specialist diagnosed cause of disability and accident was for first time recalled and related to disability. There are at least several other cases in our jurisprudence where the initial medical injury received through what is an "accident" under our compensation law is so slight as to cause the medically uneducated employee not to relate the delayed disabling symptoms to an accident, but often to non-traumatic ailments; Mottet v. Libby-Owen Ford, 220 La. 653, 57 So.2d 218; Morgan v. Rust Engineering Company, La.App., 52 So.2d 86; Stephenson v. McCook Brothers Funeral Home, Inc., La.App., 27 So.2d 644.
Because Michel testified that he had suffered a back injury in 1938, following which he was unable to work for 3 days, and that from 1938 up through the accident in 1953 he had suffered back pains every two or three years for two or three days, defendant argues that Michel suffered from a chronically weak back which is the cause of his disability, rather than any accidental injury. Even had the proof shown a latent weakness, an aggravation while working producing disability is a compensable accident, or "the giving way of any portion of the laborer's body while engaged in his work", Rivero v. Leaveau, La.App., 45 So.2d 418 at 422 (involving ruptured intervertebral disc in employee with previously weakened back). But the fact that Michel had worked without difficulty for fifteen years at hard manual labor following the slight injury of 1938, except for his period of military service, would indicate the slight injury of 1938 had no relation to the present disability of 1953 and thereafter.
Michel admitted on the witness stand that he could not recall the exact date of the accident, whether on September 20th as alleged or on any particular date within the two weeks thereafter. Like the District Court, we do not feel that the inability of this laborer with an admittedly poor memory to recall the exact date or time of an accident is any indication that the accident did not occur. We do feel, however, in view of the proof that the accident could not have occurred on September 20, 1953 (a Sunday), but in view of the uncontradicted testimony that any accident that occurred was not later than two weeks thereafter, that it will adequately serve the ends of justice to fix the date of the accident as October 5, 1953, the first weekday following the expiration of the two weeks following September 20, 1953.
*40 The learned and conscientious District Judge found that Michel was only permanently partially disabled, in view of the testimony that he had been employed at a salary of $260 per month for approximately two months before the trial. Michel's duties in this employment were to operate a speedboat to and from an on-the-water drilling site, transporting the drilling crews to and from said site. He stayed at the drilling site during the 12-hour shift, during which at his leisure he cleaned the boat and the quarters of the drilling crew.
Michel's former duties as drag line operator included the handling of heavy equipment and steel and related heavy duties, which the District Court held (in which finding we concur) Michel was no longer able to perform. We feel that under the jurisprudence, Michel is totally rather than partially disabled; Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695; Fruge v. Pacific Employers Insurance Company, La.App., 1 Cir., 71 So.2d 625, affirmed on other grounds 226 La. 530, 76 So. 2d 719; Strother v. Standard Accident Insurance Company, La.App., 1 Cir., 63 So.2d 484; Fontenot v. Goldenstern Pipe & Supply Company, La.App., 1 Cir., 50 So.2d 484. These and other cases hold that where an employee due to the accidental injury is unable to perform substantially the duties formerly performed by him during the employment in which injured, he is totally disabled, despite his ability to earn a living doing other and lighter or less laborious, or less (or more) skilled duties.
For these reasons, Michel is entitled to compensation during disability at the rate of $30 per week, not to exceed 400 weeks in all, since 65% of the weekly wages ($85.80) he was earning at the time of the accident exceeds this statutory maximum.
With reference to the plaintiff's request for penalties and attorneys' fees under LSA-R.S. 22:658 for arbitrary failure by defendant insurer to pay compensation, we agree with the District Court's refusal to disallow them in this instance. Under all the circumstances of this particular case, in view of plaintiff's own initial uncertainty, we do not feel it was arbitrary or unreasonable of defendant to litigate the question as to whether or not an accident had occurred.
For the above and foregoing reasons, the judgment of the District Court herein is amended to decree judgment in favor of plaintiff and against the defendant for compensation at the rate of $30 per week commencing October 5, 1953, during the disability of the plaintiff, not to exceed 400 weeks, with legal interest on each weekly compensation payment from date of delinquency until paid. Defendant is further assessed with all costs of these proceedings and of this appeal.
Amended and affirmed.
ELLIS, Judge (dissenting).
On March 9, 1954 counsel for plaintiff addressed a letter to the defendant in which he made demand for the maximum amount of compensation payable "to a totally, permanently disabled employee" as a result of an accident which happened to plaintiff "on or about September 29, 1953."
On March 29, 1954 suit was filed by the plaintiff and in Article 2 he alleged that the accident occurred on or about September 20, 1953.
On the trial of the case, plaintiff of his own knowledge could not state what day of the week nor the date nor whether it was morning, noon or afternoon that he suffered his alleged accident.
It is undisputed from the testimony in the record that plaintiff had no idea as to how or when or where he injured his back other than one Sunday night he was at the picture show and had one of his children on his lap, and when he got up he felt the pain in his back. However, the record shows that on March 19, 1954 he visited two former fellow employees whom he *41 said reminded him that he had hurt his back while working for the defendant's insured and while engaged in lifting one end of a spreader bar and the two fellow employees were lifting the other end. This spreader bar was shown to have weighed approximately 400 pounds, and why plaintiff would be lifting one end by himself while two colored men lifted the other end is unexplained in the record, but it is certain that until he visited these fellow employees he had no idea or independent recollection of having injured his back in this manner, nor did he have even on the trial of the case, for when he was placed on the stand by his attorney on direct examination as the first witness in the case, counsel, after leading him as to the date of his injury, September 20, 1953, asked the following question which was the fourth question propounded to him:
"Q. Will you explain to the Court how you were injured on that date? A. We were lifting something, I do not remember exactly what it was but I do remember we were lifting on something heavy and I hurt my back and whatever it was we were lifting, we had to put it down."
Counsel then lead plaintiff by asking, "Was this thing you were lifting a spreader bar?" and from then on he remembered that such was the case.
As shown by the District Court's written reasons and the majority opinion, there is no question but that the plaintiff suffered a ruptured intervertebral disc, and no question but that he had been having trouble with his back prior to the time he was employed by defendant's insured. The only question is whether he suffered an accident and the resulting intervertebral disc rupture in the course of his employment.
It is also admitted as shown by the record that plaintiff continued to work without any interruption or complaint to his employer even after his alleged accident and after he injured his back in attempting to get up with his child in the picture show on a Sunday night which he claims was some two weeks after the original accident while working. He worked on Monday after hurting his back in the picture show, and either on that day or on Tuesday, the following day, he testified he went to see Dr. Russo who treated him for sciatic trouble. He then went to see Dr. Brownell and continued working that whole week. Dr. Brownell treated him another week and it was after that that the latter doctor stopped him from working. He then went to the Veterans' Hospital, was discharged from there and returned to work for ten or eleven days when his leg and back started hurting again, therefore, according to his testimony, he quit.
The defendant offered the testimony of the chief engineer on the job at the time that plaintiff claimed he was injured, and his testimony is undisputed to the effect that after the incident plaintiff narrated with regard to the picture show it was evident that something was wrong with plaintiff, and this witness questioned him as to whether he had had an accident, and plaintiff told him that he did not know how it happened or when it happened but he did tell this witness about hurting his back in the picture show. This witness further testified that he asked him if he thought he had sustained an injury in the yard to fill out an accident report, "since our insurance covered such an injury," to which plaintiff answered again that he did not know when, where or how it happened and was making arrangements then to go to the Veterans' Hospital. Plaintiff never did fill out the accident report as requested.
Also offered as a witness on behalf of the defendant was Miss Genevieve Guidry, bookkeeper and secretary at the time plaintiff was employed, who testified that: "When he (plaintiff) first said something about his back, I asked him if he wanted to fill out a report and he said he did not know when or where he got hurt," and that he never did fill out an accident report. This witness also testified that he never filled out any accident report.
*42 Also testifying to the same effect was another fellow employee of plaintiff who was yard superintendent, had noticed plaintiff limping around and who went to lunch with him practically every day. This witness stated that plaintiff told him that he did not know for certain how, when or where he had hurt himself.
In rebuttal plaintiff again took the stand and was asked by his counsel whether he told the various witnesses who testified on behalf of defendant that he did not know where he had hurt his back, and he answered: "I may haveI said I did not know just exactly when I got hurt and I still do not know." (Emphasis added.) Counsel then elicited from plaintiff that it was within a few days of September 20th.
In addition to the above outlined testimony, it is shown by plaintiff himself that after he quit working for defendant's insured without filling out an accident report or claiming that he was hurt on the job, although asked to do so, he fished for three or four weeks but stated that his leg was still hurting him and that he was unable to do this so he bought a license to drive a cab, which he did for two or three months. He testified that while driving the cab his leg still hurt him.
Dr. Howard Karr in a letter introduced of date May 25, 1954, stated that plaintiff had a tremendous disc at the fifth lumbar interspace which he removed on May 24, 1954.
Based upon the above testimony I do not believe that plaintiff has proven an accident and injury to his back during the course of his employment, and I respectfully dissent on this finding of the majority opinion.
The Lower Court correctly found that "the plaintiff was a drag line operator for the Bayside Construction Company, Inc., and in the course of his employment he was required to do other duties besides that of an operator." In other words, he was required to do general labor when not operating the drag line. It is also shown by the record that one of his other main occupations prior to his employment with the defendant's insured was that of a boat operator, which he was doing and had been doing prior to the trial of the case on September 22, 1954. In addition to operating this boat for an oil company he was required to keep the boat in shape and if the engine broke down he was required to fix it. He was also required to clean up the camp for which he was paid extra. It is also shown that he had assisted his wife in her grocery store. All of this, of course, was after his recovery from his disc operation.
We have in the record a statement from Dr. Karr, which is undisputed except by the plaintiff, that he was physically able to return to his former duties and that when the plaintiff came to see him on September 16, 1954, just prior to the trial, plaintiff complained of his right leg hurting him in the posterior aspect of the right calf. He also at that time told Dr. Karr that he was operating a crew boat. Dr. Karr then states: "After some discussion with the patient it appears that he is concerned about the future. The present complaints in themselves apparently don't disturb him greatly and certainly have not incapacitated him." Dr. Karr concluded from his examination and conversation with plaintiff that he was fully recovered and he considered him physically qualified to resume his normal activities. The only testimony to the contrary is that of the plaintiff himself that he tried to operate a drag line but could not. He offered no corroborative testimony on this point.
I am, therefore, of the opinion that for the sake of argument should we admit that plaintiff suffered the accident during the scope of his employment, he is fully recovered.
Thirdly, I am of the opinion that if we admit for the sake of argument that he is not fully recovered that then, under the testimony, the judgment of the District Court is correct on its finding of partial disability except that the period should be 300 instead of 400 weeks. I base this conclusion *43 upon the showing in the record that plaintiff was not employed only as a drag line operator at the time of his alleged injury but that one of his main occupations formerly had been as the operator of a boat, which he was engaged in at the time of this trial. There is no proof that he could not perform similar duties other than that of a drag line operator which were required of him on the date of his alleged injury.
For the above reasons I respectfully dissent from the majority opinion and believe, first, that the plaintiff has failed to prove an accident within the scope of his employment; secondly, that it has been shown that if he did suffer such an accident he has fully recovered; and, thirdly, that if he has not fully recovered he is only partially disabled and the judgment of the District Court should be affirmed with the amendment suggested.
NOTES
[1] On May 25, 1954, this specialist wrote the Maryland Casualty Company "I see no reason why this patient should not be fully rehabilitated for the performance of his work as a crane operator", and of course, on re-examination on September 16, 1954, in Dr. Karr's opinion Michel was "fully recovered from his previous disability and he is considered physically qualified to resume his normal activities".