199 So.2d 429 (1967)
L. J. SATTERWHITE, Plaintiff-Appellee,
v.
ZURICH INSURANCE COMPANY, Defendant-Appellant.
No. 7046.
Court of Appeal of Louisiana, First Circuit.
May 29, 1967.
Magot Mazeau, of Normann & Normann, New Orleans, for appellant.
Burch Downman, Houston, for appellee.
Before LOTTINGER, REID and SARTAIN, JJ.
SARTAIN, Judge.
This is an action for workmen's compensation. Defendant appeals from a judgment awarding plaintiff, L. J. Satterwhite, compensation at the maximum statutory rate for total and permanent disability together with accrued medical expenses. Defendant urges here as in the trial court that the incident giving rise to this action was not an "accident" within the intent and under the express provisions of the Louisiana Workmen's Compensation Act, and therefore the injury allegedly sustained by plaintiff is not compensable, and, in the alternative, that if plaintiff did suffer injury through a compensable accident that he recovered very shortly thereafter and from the date of recovery has malingered.

*430 STATEMENT OF FACTS
Plaintiff, 28 years of age at the time of the trial, was employed by Houston Contracting Company, defendant's insured, on August 21, 1964 as a welder's helper at the rate of $2.05 per hour. He was assigned to assist journeyman welder, Tillman Shows.
Houston Contracting Company was enengaged in the construction of a pipeline near Thibodaux, Parish of Lafourche, Louisiana. On the date of the accident plaintiff reported for work at 7:30 a.m. o'clock, worked until noon, took his lunch break, and as hereinafter set forth at approximately 1:30 p.m. o'clock experienced a severe and excruciating pain in the lower part of his back.
Witnesses described the pipe being used as "large" and measuring "24 to 30 inches" in diameter. Sections of the pipe were being welded together along a line. At the time of the incident giving rise to this litigation the pipe was elevated some two feet above the ground.
It was the welder's duty to weld the sections of pipe together and in this he was aided by a helper. The helper's duties required that he work very closely with the welder and as the weld was concluded, it was the helper's responsibility to brush the flux from the weld with a wire brush. The flux is that residue from the welding material that remains at the spot of the weld. In some instances it can be easily removed and at others it requires hard brushing.
Plaintiff stated that as he was attempting to brush the weld on the bottom side of the pipe it was necessary that he place his right arm over the pipe and bend forward and down so as to reach the bottom portion of the pipe with his left hand. Plaintiff further stated that while in such a contorted position he experienced a sharp and severe pain in the lower part of his back, which caused him to fall to his knees. He told Shows that he was unable to continue and felt like he needed a doctor. Plaintiff further testified that he reported the incident to his foreman who directed another employee to take him to a doctor. The employee took plaintiff to Thibodaux where plaintiff's car was parked, plaintiff then "found" Dr. Calecas.
Dr. Calecas examined and had x-rays taken of plaintiff's back. The x-rays showed no evidence of fracture or dislocation. Dr. Calecas diagnosed plaintiff's injury as acute left lumbosacral strain and prescribed muscle relaxant drugs and a sedative. On the following day, October 22, 1964, when plaintiff returned to Dr. Calecas, his condition had not improved and because plaintiff was staying at a rooming house the doctor recommended hospitalization. Plaintiff chose to return to his home in Newton, Texas so that he could be treated by his family physician.
On August 24, 1964 plaintiff returned to Newton, Texas and was on that date examined by Dr. John W. Patton who admitted him to Newton County Memorial Hospital where he remained for two days where he was placed in traction and given muscle relaxants and pain relievers.
On September 3, 1964 Dr. Patton referred plaintiff to Dr. G. B. Stephenson, an orthopedic specialist, in Beaumont, Texas. X-rays on this occasion were negative but showed "some narrowing of the lumbosacral joint space". The doctor felt plaintiff "had a lumbosacral syndrome". He advised plaintiff to return to the hospital in Newton, Texas for further bed rest and traction. Plaintiff was readmitted to the said hospital on September 5, 1964 where he remained for eight days.
His condition failed to improve and on October 22, 1964 he was again referred to Dr. Stephenson who observed that plaintiff was "still having some tightness of his back and he had very little relief from the treatment he was getting up in Newton". On November 16, 1965 Dr. Stephenson admitted plaintiff to St. Elizabeth's Hospital in Beaumont, Texas where he remained hospitalized for eight days. Dr. Stephenson felt plaintiff *431 had responded well to treatment and because plaintiff "wanted to be discharged", he permitted his release from the hospital. When Dr. Stephenson saw and examined plaintiff on November 30, 1964 he was of the opinion that plaintiff could return to work.
Plaintiff testified that following his discharge from Dr. Stephenson on November 30, 1964, he attempted various times to work and on each occasion was required to discontinue after two or three weeks because of the pain in his back. He remained under the treatment of Dr. Patton from the date of his discharge by Dr. Stephenson up to and including the date of the trial on May 31, 1966. Plaintiff's testimony with respect to his inability to work is fully corroborated and supported by Dr. Patton who testified that he had continued to see and treat plaintiff for his back trouble during the entire period. The record reveals that he did in fact see plaintiff on some ten occasions and on at least three examined him very carefully. Dr. Patton was of the opinion that because plaintiff had not responded to traction and conservative treatment for his back difficulties that plaintiff had sustained a ruptured disc on August 21, 1964 concluding that a lumbosacral strain would have long since cleared up.
At the request of defendant and in preparation for trial plaintiff was examined by Dr. Stephenson on April 15, 1966. Dr. Stephenson stated that his examination on this date was negative and was of the opinion that plaintiff was not disabled and was capable of returning to work. In substance his report of April 15, 1966 was similar to his examination of November 30, 1964.
The issues thus presented are (1) did plaintiff sustain a compensable accident, (2) has plaintiff recovered.

AS TO THE "ACCIDENT"
Defendant strenuously directs a two prong attack on the question of whether or not plaintiff in fact was involved in an accident the consequences of which would render plaintiff entitled to compensable injuries. This argument is directly related to the particular work activities of plaintiff at the moment plaintiff contends he injured his back. Defendant also contends that the injury for which plaintiff seeks compensation is the result of prior injuries of a similar nature sustained by plaintiff on two previous occasions. In this latter respect defendant argues that there was nothing traumatically unusual about plaintiff's work and there can be no recovery merely because of pain suffered in the doing of ordinary things one must do in daily living and in normal work, citing Crimen v. Fidelity & Casualty Co. of New York, La.App., 185 So.2d 369. The trial judge held that the bending and stooping by plaintiff constituted a "strenuous effort" which brings this case within the purview of Rivero v. Leaveau, La.App., 45 So.2d 419, and the cases therein cited. Assuming arguendo that this case is governed by the Rivero case, which assumes that plaintiff's condition predated the incident giving rise to this litigation we think the trial judge correctly interpreted the applicable law when in his written reasons he stated:
"`Accident' has been defined by the Louisiana Workmen's Compensation Act, La. R.S. 23:1021 as follows:
`(1) "Accident" means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.'
La.R.S. 23:1031 provides, in part, the following:
`If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.'
*432 Injury, according to La. R.S. 23:1021, Section 7, is defined as follows:
`(7) "Injury" and "Personal Injuries" includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted.'
* * * * * *
In the case of Rivero vs. Leaveau et al. [La.App.] 45 So.2d 419, the Court of Appeal recited the following facts:
`On January 6, 1948, plaintiff was welding ammonia coils weighing, according to the divergence of opinion, from fifteen hundred to four thousand pounds, which coils were to be used in freezing units, and while they were suspended from a chain hoist, it was nonetheless necessary for plaintiff to push the coils around while so suspended in order that they would be placed in a more advantageous position to facilitate the welding thereof. Moving of the coils obviously required physical effort on the part of the plaintiff. This fact was corroborated by Alvin Canella, a fellow-employee, and by V. A. Leaveau, one of the partners in the Welding Company. Shortly before noon on January 6, 1948, plaintiff suffered, what he described and which defendants have denied, a severe pain in his back, the intensity of which caused him to immediately cease work, and leave his shield and gloves where they were. He secured a ride from defendant's place of business to the street car from Canella, who testified that plaintiff ceased work at noon because his back was hurting him.'
It is to be noted from the foregoing that the Court has stated the `moving of the coils obviously required physical effort on the part of the plaintiff'.
We note that the phrase `physical effort' was not modified by any adjective. The Court did not say `strenuous' or `extreme' or indicate in any way that contortion or unusual position was required in the performance of such physical effort. Therefore we feel that the facts as recited by the Court in Rivero v. Leaveau in so far as they are pertinent to the question of the amount of exertion of effort can be analogized to the nature of petitioner's `physical effort' in the present case.
In Sharp v. Esso Standard Oil Company [La.App.], 72 So.2nd 601, the rule to be applied was stated as follows:
`It is now well settled that to constitute an accident within the meaning of the Workmen's Compensation Law in cases where the Work of the claimant entails regularly heavy physical effort, it is not necessary that the injury from which disability follows be the result of unusual physical effort. If a diseased organ gives way while the laborer is performing his usual and customary heavy duties, and disability results, it is compensable. The doctrine is affirmatively established by the following cases, viz.: Jackson v. Travelers' Insurance Co., 180 La. 43, 156 So. 169; Renfrow v. Police Jury of Caddo Parish, La.App., 155 So. 291; Biggs v. Libbey-Owens-Ford Glass Co., Inc., La.App., 170 So. 273; Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330; Hill v. J. B. Beaird Corp., La. App., 19 So.2nd 295.' Dortch V. Louisiana Central Lumber Co., La.App., 30 So.2d 792, 796.'
The foregoing quotation uses the phrase `heavy physical effort' and excludes the necessity of the physical effort being `unusual'.
There might be a dispute as to whether the operation in which plaintiff was engaged in this case amounted to `heavy' physical effort. To adopt the language used by the Court in Rivero v. Leaveau supra, we are *433 `confronted with the specific . . . question of whether this case possess the legal requirements (as evidenced by the philosophy of our compensation jurisprudence) necessary to constitute an accident and injury which is compensable,'.
* * * * * *
It is to be noted that Rivero V. Leaveau relies on the decision of the Supreme Court of Louisiana in Hemphill vs. Tremont Lumber Co., 209 La. 885, 25 So.2nd 625, as follows:
`In view of the language used and the conclusions reached in the case of Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625, decided by the Supreme Court in 1946, it appears that the jurisprudence is well settled with respect to the fact that an accident within the meaning of the Workmen's Compensation Law is interpreted to be the giving way of any portion of the laborer's body while engaged in his work. In that case it was said: `Since this case does not involve an accident causing external injuries or producing objective symptoms, we must look to the testimony of the medical experts to determine whether this is one of those cases that come within our well-settled jurisprudence that the legal requirements are present to constitute (sic) an accident and an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, although unusual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition.' (emphasis supplied)"
We are not convinced that plaintiff must rely entirely upon the Rivero case which presupposes the aggravation of or resulting injuries stemming from a pre-existing condition. Plaintiff testified and the record preponderates to the same end that he had fully recovered from his two prior back injuries. Assuming this to be the case, we are of the opinion that because of the nature of the work engaged in by plaintiff as a welder's helper that he incurred a compensable injury as a result of an accident within the intent of the Workmen's Compensation Statutes. It is not disputed that the work of a welder in the construction of a large gauge pipeline is hazardous and as such covered by workmen's compensation. If the work of the welder is hazardous and strenuous as the facts in this case indicate we think the work of the welder's helper is also hazardous and strenuous. It was plaintiff's responsibility to work with and right next to the welder. He was required to assist the welder by stringing welding leads out to the weld, giving the welding rods to the welder, and then brushing the weld on completion. These several tasks undoubtedly vary as to the degree of physical effort required. It would be a very harsh and narrow rule of interpretation to say that a welder's helper would have the protection of workmen's compensation benefits while he is stringing welding leads or furnishing welding rods to the welder but is not covered when he attempts to brush flux from the welded joint. The better rule of interpretation as we appreciate the jurisprudence on the subject is that where a worker is regularly engaged in a hazardous occupation which requires varying amounts of physical effort, he is covered in each phase of his work so long as there is a causal relation between his employment, the accident and the resulting injuries. Prof. Wex Malone in his book entitled "Louisiana Workmen's Compensation Law and Practice, Section 98, page 116, stated:
"There is no express requirement in the Workmen's Compensation Act that the injured employee must be engaged in the performance of hazardous work at the time he is injured. In fact, the nature of the employee's duties are not referred to at all by the legislature and it might appear at first blush that it is quite immaterial what kind of work he was doing so long as the business of the employer is hazardous. However, no problem of *434 the compensation law has given the courts more difficulty than the task of fixing the required relationship between the work of the employee and the general business of the employer."
* * * * * *
Section 99, page 117:
"It is obvious that the employee who is engaged in hazardous work at the time of his injury is entitled to compensation if his duties were in furtherance of his employer's hazardous business. If the accident happens while he is so engaged, he will not be precluded from recovery by the fact that the injury was occasioned by something not ordinarily regarded as a hazardous feature of the work. For example, an employee whose duties require that he deal with dangerous machinery, can recover if he falls into a bonfire while performing his work."
* * * * * *
In Hill v. J. B. Beaird Corp., La.App., 19 So.2d 295, it was held that a welder's helper suffered a compensable injury while picking up nozzles which in effect determined that protection provided by the Workmen's Compensation Act comprehends injury by accident caused by the giving way of effected parts of the body while at work, though the disability was not the immediate result of an unusual strain or physical effort. See Ryland v. R. & P. Construction Co., 19 So.2d 349; Smith v. Walker, La.App., 35 So.2d 766. For a detailed and complete study on "accident" defined see Malone, Chapter 10.

PLAINTIFF'S INJURIES
The trial judge held that the plaintiff had in fact sustained an injury to his back on August 21, 1964, and with this conclusion we agree. As stated above each doctor on their respective initial examination found muscle spasm in plaintiff's back. Dr. Stephenson found plaintiff able to return to work on November 30, 1964 and was of the same opinion following his examination of plaintiff on April 15, 1966. Dr. Patton stated that plaintiff was rendered disabled on August 21, 1964 and has remained disabled. Defendant urges that because Dr. Stephenson is an orthopedic specialist his opinion is entitled to greater weight than that of Dr. Patton, a general practitioner. This contention by defendant states a generally accepted rule. This of course presupposes that the basis upon which the respective doctors testify and the facts upon which their testimony is based are the same and that each is favored with comparable information. However, where the specialist, as here, did not see plaintiff for a period of some 16 months, during which time he was regularly seen and treated by the general practitioner, it is not manifest error on the part of the trial judge to accept as controlling the testimony of the general practitioner. This is particularly true where the specialist admitted that plaintiff's improved condition on November 30, 1964 could have been due to bed rest, traction, and hospital services, and further where said specialist limited his negative findings on his last examination to the day and date of said examination, April 15, 1966.
Throughout the trial of this case on the merits and in brief and oral argument before us hung the shadow of defendant's endeavor to discredit the testimony of plaintiff by showing that plaintiff had on one previous occasion been convicted of felony-theft which resulted in a suspended two year sentence. On another occasion plaintiff was indicted for theft by worthless check though he was not brought to trial on this latter charge. In addition to the prior back injury cases plaintiff had sustained two additional hernia cases (for which he underwent surgery). Defendant urges that the cumulative effect of this evidence completely discredits plaintiff's testimony and this coupled with the subjective nature of pain and the possibility of voluntary muscle spasm clearly preponderate to brand plaintiff a malingerer. The trial judge concluded to the contrary and found for plaintiff.
*435 We have carefully examined the record, testimony and exhibits and cannot hold that the judge a quo committed manifest error in his determination of the issues herein both as to the nature and extent of plaintiff's injury.
The responsibility to weigh carefully, judge cautiously, and evaluate thoroughly the testimony of witnesses bear heavily on the shoulders of the trial judge and his determination of the credibility of witnesses and the reasonableness and truthfulness of their testimony should not be overturned except upon a showing of clear, positive, and manifest error. Reeve v. Clement-Braswell Machine & Fab. Works, La.App., 66 So.2d 387; Dupree v. Monroe Sand & Gravel Co., La.App., 1943, 18 So.2d 845; Lunkin v. Triangle Farms, Inc., La.App., 1945, 24 So.2d 213; Eldridge v. Federal Compress & Warehouse Co., La.App., 1945, 24 So.2d 492; Howell v. Clemons Bros. Lumber Co., La.App., 1947, 32 So.2d 60; Williams v. Armour Fertilizer Works, Inc., La.App., 1950, 45 So.2d 640; Skyles v. United Investment Corporation, La.App., 1950, 46 So.2d 662; Chelette v. Russell, 1952, La.App., 59 So.2d 210; Malone, Louisiana Workmen's Compensation Law and Practice, Section 252, page 301; Davis v. Swift & Co., La.App., 68 So.2d 670; Alexander v. Huff Truck Line, La.App., 76 So.2d 125; Jackson v. Bituminous Casualty Corp., La.App., 153 So.2d 585; Veals v. Baton Rouge Coca-Cola Bottling Co., La.App., 174 So.2d 824; Marcantel v. White Painting Co., La.App., 171 So.2d 748.
It would not be fair to the plaintiff or defendant's specialist to leave the impression that the latter concluded that plaintiff was in fact a malingerer. This the witness did not do. The difference of opinion between these medical experts relates entirely to the question of recovery as they were in basic accord with respect to the early diagnosis of plaintiff's injury.
For the above and foregoing reasons the judgement of the district court is hereby affirmed.
Affirmed.