The plaintiff claims have sustained an injury resulting in a right inguinal hernia while working for the defendant company on August 5, 1946. He sues for compensation at the rate of $20 per week for a period not exceeding 400 weeks, plus the maximum allowance for medical expenses. The trial judge rendered a judgment in his favor for compensation as claimed, witheight per cent per annum interest on the weekly installments from their respective due dates, plus the sum of $5 for medical expenses. Defendant has appealed.
Other than a question of law presented by an exception to be mentioned later, the case involves only a question of fact, that *Page 61 
whether or not plaintiff sustained the hernia which he now admittedly has while working for the defendant. The evidence shows that the defendant was receiving 60 cents per hour and was working ten hours per day for five and one half days per week. He did not work regularly the full number of days per week, but earned overtime, so that in any event his weekly wage based on his daily rate of pay of $6 would make his weekly earnings more than sufficient to give him the maximum of $20 per week if he is entitled to compensation.
Plaintiff testified that he began working for the defendant lumber company in May, 1946; that around August 5th of that year he was lifting a piece of lumber measuring 2x12 inches by 18 to 20 feet in length, and while he was trying to lift this timber from the green chain over the banister, the piece of timber got over-balanced and he strained himself trying to hold it; that he began to hurt down in his right side, and when he went home that night he found a lump in his right side and showed it to his wife and son; that he told a fellow workman, Erwin, the next day about the accident but did not tell his employer at that time as he was afraid he would lose his job. He further testified that he continued work on the job, but his side hurt so bad that he had to hold his hand to his side while working; that he told some of the colored men on the job how he was hurting, and asked them what they thought he should do, and they suggested that he go and see the boss and have something done about it. He saw Mr. Clemons, one of the defendants, in about two weeks, and Mr. Clemons sent him to Dr. McClendon.
Plaintiff went to see Dr. McClendon and the doctor had him wear a truss. He says that he worked two or three more days, but on account of the hard work handling the lumber on the green chain, he went to see Clemons to get more help. He says instead of giving him more help Clemons discharged him. Plaintiff testified that he had never had a hernia prior to the time he strained himself in lifting the lumber, but had been able to work regularly. He admits that he did not become nauseated at the time he claims to have received the hernia. The doctors, however, state that a strain could cause a hernia without producing nausea at the time.
Plaintiff's wife and son testified that he showed them the lump in his side the night he came home from work, one of them stating that the lump was as large as a golf ball. They both stated that he told them he got hurt at the mill that day lifting or pushing some lumber on the green chain. The fellow employee, Erwin, testified that in the early part of August, 1946, plaintiff pulled down his clothes and showed him where he was ruptured, and stated that he had just gotten the lump in his side. The witness told him to tell his employer; that plaintiff continued to work for a few days, and told him he was getting worse and went to see the doctor.
Dr. McClendon examined plaintiff on August 20, 1946, and found that he had a right inguinal hernia, which the doctor called a chronic hernia, however, he stated that he could not tell how old the hernia was at the time he saw plaintiff. The doctor gave plaintiff a truss to wear, and stated that he was not able to do hard work.
Plaintiff was examined by Dr. Thames the last of August, 1946, and the doctor found a direct inguinal hernia about the size of a golf ball which is reducible and does not extend into the scrotum. The doctor could not say how long the hernia had existed, and stated that it is impossible for anyone to examine a person for the first time and find a hernia and state how long the hernia has existed.
A colored man by the name of Martin was called by the defendant and stated that he began working on the green chain for Clemons in June 1946; that sometime in August or July, plaintiff told him his side was hurting, and Mr. Clemons sent him to a doctor. This witness is not very definite in his dates. On being asked if he had not heard plaintiff complain of having a sore side before July or August, he answered that he had not; that plaintiff never told him when he got hurt, but that he was hurt on the job before the witness came there in June.
Another witness named Lee called by the defendant stated that plaintiff told him he got ruptured, and the witness told him *Page 62 
he had better see Mr. Clemons and go to see a doctor; that plaintiff went to see a doctor; that the plaintiff told him about the injury about a week before he quit work, but never heard him make any complaint before that time.
Two or three other witnesses were introduced by the defendant whose testimony tends to show principally that plaintiff did not handle the large timbers, 2x12 and 2x10, which he states he was handling at the time he claims to have sustained the hernia. It appears that several other men worked on the green chain with plaintiff and each man had certain sizes of lumber to handle on the chain. While the preponderance of the evidence is to the effect that plaintiff handled smaller size lumber than he claims he was handling, yet it is probable that at times he might have been required to handle some of the larger timbers. In any event, this is not so important as the medical opinion is to the effect that a hernia can be caused by a strain or jerk received in any manner, and whether plaintiff was handling two by fours, two by sixes, or larger sizes, he could have sustained or received a rupture, particularly in view of the fact that he seems to have had weak inguinal rings.
Copies of reports of several medical examinations over a period of three years prior to plaintiff's alleged injury are in the record, and none of these shows that he had a hernia. He was not examined when he went to work for the defendant lumber company. There is a report of an examination made by Dr. George February 25, 1943, on which the notation is made "Slight impulse on coughing." There is a zero after the question as to whether plaintiff had a hernia. Several examinations were made of plaintiff after this examination by Dr. George, and in none of them is there any indication of a hernia. While plaintiff might have had what some doctors call a potential hernia at the time Dr. George examined him, it is clear that he did not have the complete hernia that he had when Doctors McClendon and Thames examined him in August, 1946.
[1] In view of the evidence and circumstances recited above, we are not in a position to say that the trial judge was in error when he concluded that plaintiff sustained the hernia while working for the defendant. The trial judge saw and heard the witnesses and was in a better position than we are to evaluate their testimony.
After the plaintiff had concluded his evidence, counsel for defendant filed an exception of no cause or right of action, based on the ground that the petition did not allege that the defendant was not paying, and would not pay compensation. The trial judge withheld his ruling on the exception, but never specifically passed on it, so far as the record shows. However, since he rendered judgment in favor of plaintiff, he thereby overruled the exception.
[2] We do not think there is any merit in the exception. In his petition, plaintiff alleges that he asked defendant if he was to be paid any compensation, and was given a negative answer. He also alleges that he made demand on the defendant for compensation through his attorney to no avail. The defendant filed an answer denying liability for compensation. These allegations taken in connection with the denials in defendant's answer are sufficient to show a dispute between the parties and that no compensation has been or is being paid.
[3] The law does not permit an allowance of eight per cent per annum interest on past due compensation payments, but only allows the legal rate of five per cent per annum. The judgment will have to be amended accordingly.
For the reasons assigned, the judgment appealed from is amended by reducing the rate of interest on the amounts past due from eight per cent per annum to the rate of five per cent per annum, and as thus amended, the judgment is affirmed. *Page 63