LANDRY, Judge.
Plaintiff appeals from the judgment of the trial court rejecting his claim for total permanent disability benefits under the Louisiana Workmen’s Compensation Act. The sole issue is whether plaintiff’s disabling back injury resulted from an accident which occurred during the course and scope of his employment as a laborer *262 by defendant. We affirm the judgment of the trial court which held plaintiff failed to prove causal connection between the accident and his present disability.
Plaintiff, a former regular employee of defendant, was, for some years prior to 1964, employed by defendant intermittently as laborer on projects known as “turn around” jobs.
From February 17, 1964, to February 22, 1964, plaintiff was employed on a “turn around” job (technically described as an overhaul of an operational facility) which involved removal of sand with a wheelbarrow from beneath an apparatus known as a “digester tank”. Plaintiff was working the night shift (from 7:00 P.M. to 7:00 A.M.) and maintains the accident occurred at approximately 2:00 A.M. on either Tuesday, February 18, or Wednesday, February 19, 1964. According to Morris, he struck his back on the edge of the tank upon emerging from beneath the facility and rising from a stooped position. Appellant related that his back hurt immediately but thé pain soon subsided and he continued working until morning. Appellant also stated he informed his brother, Huey P. Morris, and one Henry Browder (coworkers) of the accident. Plaintiff further testified that he worked until laid off the following Saturday on which day he drove a bus to Mississippi to convey members of a church congregation to a meeting. On arriving at his destination his back hurt so badly he was unable to leave the bus. The following day he consulted a physician and commenced a period of treatment that continued to the time of trial.
It is undisputed that plaintiff worked without any noticeable impairment of his ability until his layoff on February 22, 1964. Thereafter, on February 24, 1964, plaintiff executed a statement to the effect he received no injuries during the period of employment from February 17, to February 22, 1964. On April 5, 1964, plaintiff reported the accident to his employer. The report indicates there were no witnesses and also states plaintiff neither told anyone of the incident nor reported the matter to his foreman. Despite this acknowledgment on plaintiff’s part, Huey P. Morris testified that while working with plaintiff early one morning, plaintiff informed him that plaintiff had struck his back. Henry Browder testified that he observed the accident but that plaintiff appeared to have recovered rapidly and apparently suffered no ill effects.
Plaintiff concedes he did not report the injury immediately because he seemed to have recovered quickly from the blow and continued to work until laid off. His testimony is that the effect of the blow did not become manifest until a day or two after the accident. He also stated that following the onset of pain, he was no longer able to work. Plaintiff also admits he was familiar with the procedure for reporting injury to his employer. In this regard it appears that during his employment, plaintiff reported to defendant’s infirmary over ninety times with medical complaints ranging from indigestion to bodily injury. Also plaintiff obtained compensation for a previous injury sustained while working for Kaiser.
In August, 1964, and January, 1965, plaintiff was employed by defendant on other “turn around” jobs. Plaintiff acknowledges that in each instance he was examined before employment and denied suffering from any physical disability. Plaintiff complained that because of economic necessity he worked in pain on these latter occasions. Plaintiff also related that he was “carried” by his fellow employees who relieved him of all heavy work.
According to plaintiff, he consulted Dr. Isadore I. Rosen, General Practitioner, on the Sunday following his trip to Mississippi. The following day, on the advice of a friend, plaintiff consulted Dr. Richard M. Pullig, who placed plaintiff in traction.
Dr. Rosen testified he kept no record of plaintiff’s visit and could not recall the exact date thereof. From recollection, he *263 set the date of plaintiffs injury “on or about February 26, 1964” and diagnosed plaintiff’s condition on this occasion as traumatic myositis of the lower back.
Dr. Pullig, General Practitioner, stated he first saw plaintiff on March 3, 1964. He diagnosed plaintiff’s condition as lum-bosacral sprain and was of the opinion the injury was such that its effects would be felt upon occurrence of the accident. Dr. Pullig prescribed muscle relaxants and pain relievers and placed plaintiff in traction from March 16 to March 21, 1964. Plaintiff returned March 24, 1964, still complaining of back pain whereupon Dr. Pullig resumed the former medication and again placed plaintiff in traction until March 27, 1964. The records of the Clinton Infirmary (where plaintiff was hospitalized on March 16, 1964) show the injury occurred “three weeks or so ago.” It does not appear on what basis this conclusion was reached. Dr. Pullig saw plaintiff again on April 3, 1964, on which date plaintiff was referred to Dr. I. L. George, Orthopedic Surgeon, because of plaintiff’s complaints of persistent back pain. Dr. Pullig also saw plaintiff on April 10 and 29, 1964. His final diagnosis was lumbo-sacral strain. Dr. Pullig advised plaintiff to return if plaintiff did not improve. Plaintiff did not return.
Dr. George examined plaintiff on April 7, 1964, and found plaintiff suffering from lumbosacral strain. He prescribed a back brace and a one-fourth inch build up on plaintiff’s left shoe.
Plaintiff was examined February 6, 1968, by Dr. Kenneth Cranor, Orthopedist. Plaintiff related to Dr. Cranor a history of a back injury resultant from an accident in February, 1964, which produced no immediate pain but which became aggravated a few days later. Based on an extensive examination, Dr. Cranor diagnosed plaintiff’s condition as a possible herniated in-tervertebral disc which could only be confirmed by a lumbar myelogram which was not performed. Dr. Cranor was of the opinion plaintiff suffered a 5% disability of the body as a whole. Dr. Cranor could not tell how long the condition had existed. He was of the opinion plaintiff was disabled from doing heavy work during the episodic occurrence of acute pain which plaintiff related.
The degree of proof required of a compensation claimant is discussed by Professor Malone in his Louisiana Workmen’s Compensation Law and Practice in Par. 252 at page 293. In essence the rule is stated to be that the claimant need introduce only enough evidence to establish that more probably than not, the injury resulted from an accident which occurred within the scope and during the course of the claimant’s employment. Numerous cases have so held including among others, Dunphy v. Liberty Mutual Insurance Co., La.App., 177 So.2d 610; Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276; Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395; Edwards v. Shreveport Creosoting Company, 207 La. 699, 21 So.2d 878; Webber v. Wofford-Brindley Lumber Company, La.App., 113 So.2d 23; Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1.
Plaintiff argues on the basis of Bailey v. Long-Bell Lumber Co., La.App., 63 So.2d 452, and Howell v. Clemons Bros. Lumber Co., La.App., 32 So.2d 60, that no unfavorable inference should be drawn by this court from his failure to report the accident either to his foreman or his employer’s doctor. We note that recovery was sustained in Bailey v. Long-Bell Lumber Co., supra, on evidence supplied by a coworker who was informed of the accident by plaintiff and the company doctor who administered medical assistance to the plaintiff. In Howell v. Clemons Bros. Lumber Co., La.App., 32 So.2d 60, recovery was awarded after considering the testimony of co-workers who were informed by plaintiff of his injury and the medical testimony of a doctor to whom the employer sent his employee upon being informed by the employee of his injury. Thus, *264 the two cited cases are distinguishable from the case at bar in two aspects: (1) there was present in both of the cited cases a reporting of the accident to either a doctor or the foreman of defendant company within a reasonable time period of the accident, and (2) there was adequate medical testimony showing a reasonable possibility of causal connection between the accident and the disabling condition.
Appellant maintains the trial court erred in failing to find plaintiff’s disabling back injury was causally related to the accident which the lower court found to have occurred. In so arguing, plaintiff refers to numerous authorities which hold that back injuries are compensable even though the pain and subsequent disability do not become manifest until several weeks or months following the accident. In so contending appellant relies on Johnson v. Cabot Carbon Company, 227 La. 941, 81 So.2d 2; Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522; Brewster v. City of Shreveport, La.App., 108 So.2d 801; Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218. Our examination of the cited authorities disclose that they more properly support the position that prescription in compensation cases commences from the time injury becomes manifest and not from the date of occurrence of the accident. We also note that in none of these cases was there any question as to whether or not the injury occurred within the scope and during the course of the employee’s employment.
On authority of Gates v. Ashy Construction Company, La.App., 171 So.2d 742; Nixon v. Pittsburgh Plate Glass Co., La.App., 161 So.2d 361, and Blanchard v. Travelers Insurance Company, La.App., 121 So.2d 515, appellant correctly maintains disability is presumed to result from an accident if the employee was in good health before the incident, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided the medical evidence shows reasonable probability of causal relationship between the accident and the disabling condition. We note, on our own, other authorities to the same effect. See White v. Calcasieu Paper Company, La. App., 96 So.2d 621; Michel v. Maryland Casualty Company, La.App., 81 So.2d 36.
Finally, appellant asserts inconsistencies in a plaintiff’s testimony are not unusual when a matter is tried more than four years following an accident and such variances, when reasonable, should not defeat a claim. Simmons v. Gulf and South American Steamship Co., D.C., 260 F.Supp. 525.
We are in agreement with each of the principles stated. However, each principle must be applied in the light of the circumstances of the particular case under consideration.
In the case at bar we have more than a mere failure to report an accident. Plaintiff, despite the alleged accident, admittedly suffered no immediate disabling effects and continued to work unimpaired until his release. Additionally, plaintiff signed a statement two days following his release in which he admitted he sustained no disabling injuries in the course of his employment during the previous week. We believe this circumstance highly significant in view of plaintiff’s testimony to the effect he consulted Dr. Rosen on the preceding Sunday, February 23, 1964. Moreover, plaintiff on subsequent periods of employment denied any back impairment. We find it extremely unlikely that plaintiff, being thoroughly familiar with the manner of reporting accidents to his employer, would have neglected to report the incident in question and would on repeated subsequent occasions deny the occurrence of such an event knowing his response would appear on his work record.
Nor do we find that the medical testimony establishes more probably than not that plaintiff’s disability resulted from an accident occurring within the course of plaintiff’s employment by defendant.
*265 As shown above, Dr. Rosen’s testimony establishes that the injury arose on or about February 26, 1964. Plaintiffs employment with defendant terminated February 22, 1964.
Dr. Pullig’s testimony that an injury of the type noted was one likely to be immediately noticed and reported is inconsistent with plaintiff’s contention the accident occurred either February 18, or 19, 1964, but that his back did not become painful until February 22, 1964.
Because the records of the Clinton Infirmary do not show on what basis the accident reputedly occurred “three weeks or so” prior to March 16, 1964, we can attach little significance to this notation.
We conclude plaintiff has failed to establish his claim with that degree of certainty required by law in compensation cases as hereinabove set forth.
The judgment of the trial court is affirmed at appellant’s cost.
Affirmed.