LEMMON, Judge.
Equitable Equipment Company has appealed from a judgment awarding plaintiff long-term disability benefits under the provisions of a group insurance policy issued by Continental Assurance Company.[1]
Plaintiff was employed by Equitable as a welder from May, 1967 until February 10, 1971, when plaintiff entered the hospital suffering from a perforated ulcer. He has not worked since that date.
Continental paid plaintiff short-term disability benefits for the maximum period of 26 weeks. In this suit asserting entitlement to long-term benefits, Equitable raised several issues, including the question as to whether plaintiff was continuously disabled within the terms of the policy. We decide the case, however, solely on the basis that the policy did not cover plaintiff’s disability caused by a sickness which commenced before the policy was in force.
I
While in the service in 1945, plaintiff developed hoarseness and was treated for several weeks. Later, the skin on his hands, elbows, forearms and buttocks broke out in blisters, which resulted in thickening, scarring and depigmentation. These infections occurred over the subsequent years at irregular intervals.
After his discharge from the service plaintiff maintained consistent employment until 1957, when he sought medical attention for persistent hoarseness. After numerous referrals to various medical specialists, extensive testing, and a ten-month stay in Charity Hospital, plaintiff was determined to be suffering from lipoid pro-teinosis, an extremely rare disease which affects the skin and mucous membrane, particularly of the throat, larynx and tongue. The disease, a progressive one with periods of remittance and recurrence, causes thickening, swelling, and sometimes ulceration, and it is difficult to determine in specific cases whether ulcerations result from this disease or from secondary infections.[2]
After the extensive hospitalization plaintiff continued treatment as an outpatient and received benefits from the Veterans Administration for non-service connected disability. He ultimately gave up the treatments, because he “wasn’t getting along any better”, and in 1966 began employment at a shipyard as a welder. After working there for almost a year, he left because of a shortage of work and obtained similar employment at Equitable.
Plaintiff did not miss any appreciable periods of work because of illness or injury during his tenure at Equitable except for hernia surgery in July, 1970.
After being hospitalized in February, 1971 by the stomach ulcer for 18 days, plaintiff continued under regular treatment by Dr. Hollis Stafford for that condition *555 through August. Thereafter, Dr. Stafford treated him periodically for epigastric pain, generally by prescribing medication and special diet. Dr. Stafford also occasionally administered antibiotics for relief of the lip-oid proteinosis.
Dr. Stafford opined that plaintiff was disabled from the two conditions, but admitted that the ulcer was not alone disabling and that opinions about the results of lipoid proteinosis were not within the field of his competence. He particularly recommended that plaintiff not return to employment as a welder, because of throat irritation from dust and smoke.
In January, 1972 plaintiff was examined by Dr. Adrian Cairns, an otolaryngologist. Dr. Cairns found plaintiff disabled for any work involving physical labor, because the disease causes difficulty in swallowing, talking and breathing which is worsened by physical exertion.
In February, 1973 plaintiff was examined at Equitable’s request by Dr. Ronald Martz, an internist who frequently performed disability evaluations. Dr. Martz diagnosed lipoid proteinosis, chronic peptic ulcer and peripheral arteriosclerosis with intermittent claudication. Because all these conditions were progressive, he did not believe plaintiff “would be fit for any other type of work.” He also stated that plaintiff’s claim he was not disabled until the ulcer attack was not inconsistent with his findings.
II
Under the long-term disability policy the insurer contracted to pay benefits when the insured became totally disabled because of injury or sickness.[3] The policy further defined sickness and injury, sickness being defined as:
“ ‘Sickness’ wherever used in the policy means sickness or disease commencing while the policy is in force as to the Insured whose sickness is the basis of claim.”
Thus, the insuring clause obliges the insurer to pay for certain losses resulting from injury or sickness, and the policy’s definitions of injury and sickness define the scope of that coverage. Since only those sicknesses which fall within the definition are covered under the insuring clause, the policy is apparently not intended to cover a disability resulting from a preexistent condition.
The evidence established that plaintiff’s disability resulted from lipoid protein-osis, a sickness which commenced in 1945. While plaintiff did not become totally disabled until 1971, the causative sickness commenced years before, and we conclude that the policy by its express terms simply does not provide coverage for disability resulting from such sickness.
Plaintiff argues, however, that when an insurer issues a group policy, it must accept coverage on all of that cross section of employed people. The insurer did accept plaintiff for group coverage; it agreed, however, (as do the insurers under all policies) to cover only those losses caused while the policy is in force. We do not find the provisions of this particular group policy, requiring by its precise terms that the sickness which causes the disability also commence while the policy is in force, to be repugnant to group insurance principles.
*556 Plaintiff points out, however, that Section (c) of the “Limitations” provides that no insurance is afforded:
“as to a disability commencing during the first twelve months that insurance is in force with respect to the Insured if the disability is caused or contributed to by, or as a consequence of, a disease or injury for which the Insured received medical treatment or services, or took prescribed drugs or medicines, during the three month period prior to the effective date of such insurance . . .
Further pointing out the lack of any evidence as to treatment or medication during the applicable three-month period, plaintiff argues that Equitable is attempting to use the definition of sickness as an additional limitation upon the limits set forth in the “Limitations” section. In effect plaintiff argues that the two “limitations” are irreconcilable, and that the conflict must be resolved by applying that provision which affords coverage rather than that which excludes coverage.
We find no such irreconcilable conflict. The policy was not intended to cover disabilities resulting from a pre-existing sickness or disease, regardless of how much time elapsed between the date the sickness or disease commenced and the effective date of the policy. We view the purpose of Section, (c) as establishing a presumption as to the commencement date of the sickness or disease under certain conditions.
The determination of the commencement point of a sickness or disease has caused considerable litigation. The general rule places the time of inception as the time that the sickness or disease first manifests itself or becomes active, although prior to that time the germs or infection may have been present in the body in a latent or inactive condition. Meyer, Life and Health Insurance Law § 15.9 (1972); 53 A.L.R.2d 686; 10 Couch, Cyclopedia of Insurance Law § 41:809, 810 (2nd ed. 1962).
 What constitutes manifestation is a more difficult question. Particularly troublesome problems arise when symptoms occur just before coverage attaches, although the sickness or disease is not diagnosed until after the crucial date, and the insured thus was not aware he had the particular sickness or disease before the effective date of the policy.
To handle this perplexing proof problem, Section (c) establishes a rule that the sickness or disease has manifested itself before the effective date of the policy if the insured received medical- treatment for the sickness or disease or for symptoms of the sickness or disease within three months prior to the effective date of the policy. Section (c) in actuality establishes a conclusive presumption under the particular circumstances (providing disability also occurs within the first 12 months of policy coverage). However, if treatment for the sickness or disease, or for the symptoms thereof, was more than three months before the effective date, Section (c) leaves the finder of fact free to determine from the preponderance of the evidence whether or not that treatment constituted a manifestation of the ultimately disabling sickness or disease. Of course, the finder of fact may find, depending on the evidence, that the insured had recovered from the prior condition or that the disabling disease was different from the preexistent one.
In the present case the presumption established by Section (c) is inapplicable, and the determination of preexistent condition depends on the evidence. We conclude that this record can only support a conclusion that lipoid proteinosis antedated the policy.
Plaintiff further argues that Equitable’s interpretation of coverage conflicts with the policy provision entitled “Time Limit on Certain Defenses”, which proscribes denial of claims on the ground that the disease existed prior to the effective date of coverage, if the disability com- *557 menees after two years from the effective date of coverage.[4]
This type of provision, which may be likened to a statute of limitations, protects an insured who has held the policy for a prescribed minimum period of time from denial of a claim based on preexistent conditions. The intent is to provide certainty of coverage to an insured who maintains his policy in force for the minimum period, on the theory that an insured should be covered if he does not suffer a loss from the preexistent disease during the minimum period.
We hold that the policy, under its unambiguous terms, did not provide coverage for plaintiff’s disability.
Accordingly, the judgment of the trial court is reversed, and it is now ordered that plaintiff’s suit be dismissed, with each party to bear its own costs.
Reversed and rendered.

. Continental’s group policy, which went into effect on April 1, 1970, originally provided life, hospitalization, and long and short-term disability insurance. On December 1, 1970, however, Equitable cancelled the long-term disability coverage and undertook to provide the identical protection itself. Counsel for Equitable conceded that the policy terms governed Equitable’s liability for long-term disability benefits.

. Treatment with steroids has a tendency to predispose the patient to other infections.
One physician, a specialist in internal medicine, researched the 200 reported cases of the disease and found stomach problems involved in some cases, but expressed his belief that plaintiff’s stomach problem in 1971 resulted from a peptic ulcer and was not secondary to lipoid proteinosis.

. The pertinent provision as to benefits under the insuring clause read:
“If the Insured while insured under the Policy, and while under the age of sixty-four years and six months, becomes totally disabled solely because of injury or sickness from performing each and every duty pertaining to his occupation and remains continuously so disabled during and beyond the elimination period, and if proof of loss is furnished as hereinafter set forth, the Corn-pony will pay a benefit at the rate determined in accordance with the terms of the Policy. * * * ” (Emphasis supplied)

. R.S. 22:213, subd. A (13) (b) requires this type of provision as to claims for disability commencing after three years from the effective date of coverage.