LABORDE, Judge.
This is a suit by Ramesh N. Patel, Et Ux, to recover expenditures incurred for hospitalization and other medical expenses under the provisions of a hospitalization insurance policy issued to the plaintiff by defendant, NN Investors Life Insurance Company, Inc. From a judgment awarding the plaintiff the sum of $4,708.60, including legal interest from the date of judicial demand, the defendant appeals. Plaintiff answers the appeal requesting penalties and attorney fees. Finding no error in the trial court judgment, we affirm.
FACTS
The undisputed facts are that the defendant issued a hospitalization policy to the plaintiff and his wife on June 1, 1983. On June 27,1983, Mrs. Patel visited her family physician, Dr. LeBeau, with complaints of lower abdominal pains. During his examination, Dr. LeBeau diagnosed her condition as pelvic inflammatory disease (PID). Dr. LeBeau also performed a routine papanico-laou test (Pap smear) and that same day admitted Mrs. Patel to Memorial Hospital for treatment of PID. She remained in the hospital three days and was discharged on June 30th after recovering from PID and upon getting the results of the Pap smear. Dr. LeBeau recommended to Mrs. Patel that she make an appointment with a gynecologist for further examination and testing because her Pap smear was returned a Class III, showing some abnormality.
On July 21, 1983, Mrs. Patel saw Dr. John Moffett, an OB-GYN, who examined *1163 her, reviewed the Pap smear result, and performed a colposcopy. The lab results of this later test revealed that Mrs. Patel had carcinoma in situ, the earliest stage of cancer.
Dr. Moffett hospitalized Mrs. Patel on August 8, 1983, and performed a hysterectomy. Mrs. Patel’s claim for hospital and medical expenses of this operation were denied by defendant on the ground that the policy provided benefits to cover expenses “resulting from sickness, which first manifests itself more than 30 days after the Insured Person becomes covered and while the insurance is in force.”
The issues presented on appeal are (1) whether the “sickness,” carcinoma in situ, first manifested itself during the thirty day suspensive period which would deny coverage under the policy; and (2) whether penalties and attorney fees should be awarded for the unreasonable refusal to pay such expenses.
The defendant contends that it is clear the same sickness or condition which was ultimately diagnosed as carcinoma in situ had manifested itself through the Class III Pap smear conducted within the thirty day exclusionary period.
The definition of sickness in the policy reads as follows: “sickness means sickness or disease of an Insured Person which first manifests itself more than thirty days after the Insured Person’s coverage became effective and while the coverage is in force.” The trial court, in reasons for judgment, stated:
“The defendant has very clearly pointed out to the court that the plaintiff’s treating physician, Dr. LeBeau, discharged Mrs. Patel from the hospital on June 30, 1983, (her first confinement) with the discharge diagnosis of ‘1) pelvic inflammatory disease and 2) class III pap smear.’ No further tests, diagnosis or other treatment was performed on Mrs. Patel at this time. The court finds that the medical evidence is clear that Mrs. Patel was asymptomatic at the time of her discharge on June 30, 1983. In other words, she herself had experienced no symptoms or complaints of the disease or condition that was finally diagnosed as CA ‘in situ.’ The first hospitalization was for treatment of a condition unrelated to the final diagnosis....
The court finds that the plaintiff and her physicians were totally unaware of the existence of the condition which led to her hysterectomy. She suffered no symptoms, her physician did not diagnose her condition and in fact was unable to diagnose her condition at that time.”
In Mitchell v. Equitable Equipment Company, 319 So.2d 552 (La.App. 4th Cir.1975), reversed on other grounds, 330 So.2d 919 (La.1976), the court was faced with a similar interpretation problem. In that case the court reasoned that in order to determine the beginning point of a sickness or disease is to place the time of inception as the time the sickness or disease first manifests itself or becomes active, although prior to that time the germs or infection may have been present in the body in a latent or inactive condition. (Citations omitted.)
“What constitutes manifestation is a more difficult question. Particularly troublesome problems arise when symptoms occur just before coverage attaches, although the sickness or disease is not diagnosed until after the crucial date, and the insured thus was not aware he had the particular sickness or disease before the effective date of the policy.”
Mitchell, 319 So.2d at 556.
In the instant case, the trial judge determined that Mrs. Patel was asymptomatic, that is, presenting no subjective evidence of disease. The record reflects that Mrs. Patel’s first manifestation of carcinoma in situ came around July 21, 1983, which resulted in her hospitalization and surgery on August 8, 1983. The existence of a Glass III Pap smear may have predated the thirty day suspensive period in the policy, but such a test was not a “sickness” within the definition of the policy. The “sickness” herein (carcinoma in situ which resulted in a hysterectomy being performed) occurred *1164 or manifested itself and caused the loss (medical expenses) well after the thirty day suspensive period in the policy.'
We conclude that the sickness and loss occurred during the time the policy was in effect. The trial court correctly allowed recovery.
The second issue is whether the trial court erred in refusing to award penalties and attorney fees.
LSA-R.S. 22:658 provides as follows:
“All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney’s fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney’s fees.”
As between the litigants in this case there was a definite bona fide dispute as to whether there was coverage. While we disagree with the defendant’s interpretation of the policy, we do not find the defendant’s action arbitrary, capricious, or without probable cause. The trial judge found the imposition of penalties and attorney fees not warranted and we will not disturb his determination as it is not manifestly erroneous. Songe v. Tennessee Life Insurance Company, 260 So.2d 149 (La.App. 4th Cir.1972); Tingle v. Reserve Life Insurance Company, 260 So.2d 333 (La.App. 2d Cir.1972).
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.